[No. F012253. Fifth Dist. May 3, 1990.]

Conservatorship of the Person of EVERETTE M.
EVERETTE M., Petitioner and Appellant, v.
GEORGE BLETH, as Director, etc., Objector and Respondent.

**COUNSEL**

Paul Bernstein, under appointment by the Court of Appeal, for Petitioner and Appellant.

Max E. Robinson, County Counsel, and Margaret A. McKnight, Deputy County Counsel, for Objector and Respondent.

## OPINION

**STONE (W. A.), Acting P. J.—**

### THE CASE

In September 1988 the public guardian filed a petition for appointment of a conservator for appellant, Everette M., under the Lanterman-Petris-Short Act (Welf. & Inst. Code, §§ 5350-5352). In October, at the initial hearing on the petition, appellant consented to imposition of the conservatorship after an examining physician determined he was gravely disabled due to a mental disorder. The court appointed the Fresno County Director of Health appellant's conservator and gave the conservator power to place appellant in a treatment facility or hospital and to require him to receive involuntary psychiatric treatment. The court found the least restrictive placement to be a locked psychiatric facility which provided for maximum security.

The court ordered appellant transferred to the acute psychiatric unit from Fresno County jail shortly thereafter. About two weeks later, the conservator moved him to the Fresno Care and Guidance Center. The conservator eventually placed him in the Riley Board and Care Home, where he was residing at the time he petitioned for a rehearing in April 1989 on the ground he was no longer gravely disabled.

After appellant presented evidence at the hearing on his petition for rehearing, the county counsel, representing the conservator, moved for a nonsuit. The court granted the motion, finding appellant still gravely disabled and unable to provide for his basic needs without third party assistance. Consequently, the conservatorship remained in effect.

### THE FACTS

Three witnesses testified on behalf of appellant at the hearing: appellant, his fiancee, Cathy Perez, and his mother, Emma M. According to appellant, he believed that he could provide for his basic needs, such as food, clothing, and shelter with the help of his mother and his fiancee.

He testified he received approximately $575 per month in Social Security benefits. If released from the conservatorship, he would spend the first month living with his mother and use that time to find permanent housing and employment as a certified nurse's aide. He detailed his work experience in that field. If unable to find employment, he planned to attend community college.

Appellant described the medication he was taking for his mental condition, and stated he would continue taking it through an outpatient program at the Veterans' Administration Hospital if released from the conservatorship. He was aware it would be necessary to take medication for the rest of his life. He could determine when his medication was out of balance because it would cause him to suffer loss of appetite and lack of sleep. If this should happen after he was released, he would voluntarily go to the Veterans' Administration Hospital for assistance.

Appellant provided a budget in which he allotted money for rent, food, utilities, and miscellaneous, including cigarettes and gasoline. According to appellant, he had been budgeting his money in this manner for approximately four years. He also indicated he would be able to borrow money from friends or rich relatives in order to rent an apartment. He explained he would use the newspaper classified ads to find an apartment, and to rent an apartment he needed first and last months' rent, approximately $700. He also detailed how he and his fiancee intended to shop for groceries and prepare food.

Although his employment history had previously been interrupted because of problems from a difficult divorce and career transition, he nevertheless considered himself employable. On one occasion, appellant testified, when he worked as a certified nurse's aide for a two-month period, he quit because his employer's fiancee was sexually attracted to him.

He described to the court how he would prepare a resume and seek employment. While he had work experience as a nurse's aide, he also stated he had acted as an undercover agent with the sheriff's department for a period of about two weeks. When questioned further about his activities as an undercover agent, appellant related something roughly akin to informing the officers heroin was being sold in a particular area. He had seen this occur nearly two years before reporting it to authorities.

Cathy Perez testified she and appellant had lived together in the past, and she intended to live with him when he was released. She was then living with appellant's mother. She understood appellant's symptoms when he became ill and would help him monitor his medication. She is a diabetic and gives herself insulin. When she and appellant lived together previously, he had taken the rent money and spent it. Consequently, she was forced to move from the house trailer in which they had been living.

Emma M. testified appellant could live with her until mid-June, and appellant's fiancee was already living with her. She would help appellant with his food, clothing, and shelter. She, too, understands when appellant's

medication is not effective. When this occurs, she usually tells him and helps him return to the doctor. She was likewise of the opinion appellant knows when his medication becomes out of balance. She had seen appellant's fiancee help him with his medication when they lived together and believed she did a good job in this regard.

She conceded she had to call the police because of appellant's behavior, but did so because she lacked transportation to take him to the hospital. On one occasion, appellant had started a fire on a table in her home when he was attempting to fix himself a meal. In a matter of months, she would be moving to a rest home and appellant would not be able to live with her.

## THE DISCUSSION

Appellant argues the court erred when it granted respondent's motion for nonsuit. He makes a two-pronged attack, (1) that he presented sufficient evidence for his petition to survive the motion, and (2) that the court's finding of grave disability was erroneous because the court based it upon his financial status, rather than mental capacity. Because we will conclude the judgment must be reversed on the first ground, we do not discuss the second.

In a petition for rehearing, the conservatee carries the burden of producing evidence and proving by a preponderance of that evidence that he is no longer gravely disabled. (*Baber* v. *Superior Court* (1980) 113 Cal.App.3d 955, 965-966 [170 Cal.Rptr. 353].)

Gravely disabled, for these purposes, is defined as: "A condition in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs for food, clothing, or shelter, . . ." (Welf. & Inst. Code, § 5008, subd. (h)(1).)

However, it is also true that: "A nonsuit . . . may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' [Citations.] Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury." (*Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768].)

■ Further, as Witkin notes: "Some courts originally held that no verdict could be directed if the opposing party offered *any evidence* in support of his claim or defense. This doctrine that a 'scintilla of evidence' creates a sufficient conflict to go to the jury is now uniformly rejected; there must be *substantial evidence* to create the necessary conflict. And, though the test is vague and variable in application, sometimes the reviewing court finds the case so deficient in proof as to justify a directed verdict or nonsuit. [Citations.]" (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 410, p. 413.)

■ Our role in reviewing a judgment of nonsuit is well settled: "[T]he reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff. 'The judgment of the trial court cannot be sustained unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.' [Citations.]" (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 839 [686 P.2d 656].)

■ Consequently, appellant's burden to present a prima facie case has been summarized as follows: "At a rehearing, the only fact needed to be shown is that, since the prior establishment or reestablishment of the conservatorship, the conservatee's situation has changed so that he is no longer gravely disabled." (*Baber v. Superior Court, supra,* 113 Cal.App.3d at p. 966.)

On the other hand, as the court in *Baber* noted, "[J]ust as a potential conservatee is not required to prove a negative fact (i.e., that he is not gravely disabled) at a conservatorship establishment or reestablishment trial, so should the Public Guardian not be required to prove a negative fact (i.e., that the conservatee's situation has not changed) at a section 5364 rehearing." (*Baber v. Superior Court, supra,* 113 Cal.App.3d at p. 966.)

As a result, the only issue before us is whether, on the record, appellant made a prima facie showing his condition had changed to the point he is no longer disabled.

In determining whether appellant was able to establish a prima facie case his condition has changed, his ability to rely upon third parties for assistance must be considered by the court because it is relevant to the issue. (*Conservatorship of Wilson* (1982) 137 Cal.App.3d 132, 134-135 [186 Cal.Rptr. 748].)

As respondent acknowledges, appellant was able to establish the existence of a monthly income and furnish a budget which would fit within that

income. The budget included provision for food, shelter, and clothing. No evidence indicated appellant's budget was unreasonable. He also established an employment history, and testified he would seek further employment to assist in meeting his budgetary needs. Besides budgeting for food, appellant also provided the court with evidence he and his fiancee would be able to prepare this food into meals. Similarly, monitoring his medication needs would be done by appellant and his fiancee, and, to a lesser degree, by his mother.

Consequently, although appellant was gravely disabled at the time the conservatorship was established, he made a prima facie showing his condition had changed to the extent that he is now able to provide for his necessities. In addition, his testimony established his situation had changed considerably with regard to the type of facility in which he needed to be housed. The court ordered appellant placed initially in a locked facility with the maximum degree of security. The conservator later moved him to the Fresno Care and Guidance Center, and eventually to the Riley Board and Care Home. Apparently, appellant's need for secure housing diminished significantly.

We conclude the judgment of nonsuit was error and must be reversed. We cannot say appellant's offer of proof was so deficient it did not constitute a prima facie showing he is no longer gravely disabled. Likewise, as a matter of law, we cannot say a trier of fact could not legally conclude appellant has met his burden of proof. (*Estate of Lances, supra*, 216 Cal. at p. 400; see also *Estate of Sharon* (1918) 179 Cal. 447, 459 [177 P. 283].)

Respondent argues appellant's claim of ability to care for himself was based upon speculation: he had no actual job, place to live with a rent figure already established, or facts supporting his estimated food and clothing needs.

As the court stated in *Carson*, ". . . a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion, or conjecture, . . ." (*Carson* v. *Facilities Development Co., supra*, 36 Cal.3d at p. 839.) This was the essence of the conservator's motion before the trial court. Consequently, we are limited to that ground in considering the propriety of a nonsuit judgment. (*Carson* v. *Facilities Development Co., supra*, 36 Cal.3d at p. 839; *Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 93 [147 P.2d 604].) Appellant testified, without contradiction, his financial estimates were based upon past experience.

Many of appellant's responses may well have been viewed by the trial court as irrational. He testified if he needed more money he could borrow it

from a friend or rich relative. Further, he stated he had worked as an undercover narcotics agent when in fact all that he did was provide the sheriff's department with information about a situation that occurred two years earlier. However, we are not called upon to review for substantial evidence, which we would have been had counsel for the county submitted the case to the court on the evidence as it stood when the nonsuit motion was made. Instead, we must disregard the potentially conflicting evidence and accept the evidence in the light most favorable to appellant. (*Carson* v. *Facilities Development Co., supra*, 36 Cal.3d at p. 839.)

The evidence favorable to appellant shows he had a place to reside upon termination of the conservatorship (his mother's home for several months), an income (assuming Social Security benefits would continue), and a budget which would provide for food, clothing, and other basic necessities. His medical needs would be taken care of by the Veterans' Administration, with the assistance of his mother and his fiancee.

### DISPOSITION

The judgment is reversed. Costs on appeal are awarded to appellant.

Baxter, J., and Vartabedian, J., concurred.