Filed 1/21/22  Conservatorship and Estate of T.J. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person and Estate of T.J. | 2d Civil No. B311896 (Super. Ct. No. PS008295) (Ventura County) |
| PUBLIC GUARDIAN OF COUNTY OF VENTURA, as Conservator, etc.<br><br>    Petitioner and Respondent,<br><br>v.<br><br>T.J.,<br><br>    Objector and Appellant. | |

T.J. appeals from the denial of his petition for rehearing challenging the trial court's determination that he remains gravely disabled within the meaning of the

Lanterman-Petris-Short (LPS) Act.  (Welf. & Inst. Code,[1] § 5000 et seq.)  He contends:  (1) he made a prima facie showing that he is no longer gravely disabled, and (2) the dismissal of his rehearing petition violated his due process rights.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

The Ventura County Public Guardian has been T.J.'s conservator since September 1999.  In September 2020, T.J. admitted that he fell within the provisions of the LPS Act and submitted to the Public Guardian's one-year reappointment as his conservator.[2]  T.J. later decided to challenge his conservatorship in a petition for rehearing, which he filed in February 2021.

At the hearing on the petition, T.J. testified that his plan for housing was to "continue looking for a place to live."  He said that he knew of an apartment on Main Street but had not yet contacted the owner.  When asked if he had done anything besides identify that apartment, T.J. replied, "A brand new refrigerator as well as a brand new bed and used chairs.  Everything from the Goodwill."  He said he would remain at the boarding facility where the Public Guardian had placed him until he found a suitable apartment.  He said that he would continue to search for housing if the Main Street apartment did not work out.

---

[1] Unlabeled statutory references are to the Welfare and Institutions Code.

[2] Given that conservatorships automatically terminate after one year, T.J.'s appeal is technically moot.  (*Conservatorship of Manton* (1985) 39 Cal.3d 645, 647, fn. 1.)  But because the issues raised by the appeal are "of general interest and likely to reappear in the future, resolution is appropriate."  (*Ibid.*)

T.J. testified that he had not managed his own bills for 10 or 15 years. He said that he earned about $1100 in monthly Social Security income, $600 of which he planned to spend on rent. He estimated that he would also spend $200 to $400 per month on clothing and $200 to $300 per month on food.

Prior to cross-examination, the trial court asked whether anything had changed since T.J.'s most recent conservatorship extension. T.J. replied, "Because I feel together. I feel right in the middle. My medication helps me, so it slows me down so I can think quicker. I don't look good, but mentally I'm just fine. As long as the brain is in order, the whole body will be in order and so will everything else."

At the conclusion of his testimony the trial court concluded that T.J. had not made a prima facie showing that he is no longer gravely disabled. T.J. showed that "he would like to get off conservatorship" and had "some ideas about how he would go about doing that." But he had not shown that his ideas were viable: He did not know if the Main Street apartment owner would accept him as a tenant, or what its monthly rent would be. And he had not shown that his Social Security income would pay for "food, [housing], clothing, [and] medication." He thus failed to show that a change in circumstances warranted ending his conservatorship.

## DISCUSSION

### Prima facie showing

T.J. contends the trial court erred when it determined that he failed to make a prima facie showing that he is no longer gravely disabled. We disagree.

Under the LPS Act, a conservatee may petition for rehearing as to their status as a conservatee. (Welf. & Inst.

3

Code, § 5364.)  During the hearing on that petition, the conservatee bears the burden of proving, by a preponderance of the evidence, that they are no longer gravely disabled. (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 541; see also *Conservatorship of Everette M.* (1990) 219 Cal.App.3d 1567, 1573 (*Everette M.*) [at rehearing, conservatee must show that their "'situation has changed so that [they are] no longer gravely disabled'"].)  A conservatee is "gravely disabled" if they are unable to provide for their basic needs of food, clothing, and housing due to a mental disorder.  (§ 5008, subd. (h)(1)(A).)

### 1.  *Standard of review*

The resolution of this case hinges on the standard of review.  T.J. argues we should apply the standard of review for a judgment following a motion for nonsuit, while the Public Guardian argues the substantial evidence standard controls.  The Public Guardian is correct.

A motion for nonsuit is available after the plaintiff's presentation of evidence in a *jury* trial.  (Code Civ. Proc., § 581c, subd. (a).)  When deciding whether to grant such a motion, the court does not weigh the evidence but instead gives the "'plaintiff's evidence all the value to which it is legally entitled.'" (*Everette M.*, *supra*, 219 Cal.App.3d at p. 1572.)  In contrast, after the plaintiff has presented evidence in a *court* trial, the other party may move for judgment, and the court then "weigh[s] the evidence" and determine[s] whether to grant the motion.  (Code Civ. Proc., § 631.8.)

Here, the record shows that the trial court weighed the evidence and determined that T.J. failed to carry his burden. The court properly applied the standard for a motion for judgment.  Substantial evidence review accordingly applies here.

4

(*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528 [review of motion for judgment]; *Conservatorship of Johnson* (1991) 235 Cal.App.3d 693, 697 [review of rehearing petition contesting conservatorship].)

### 2. Analysis

Substantial evidence supports the trial court's finding that T.J. did not prove a prima facie case that he is no longer gravely disabled. When the court asked T.J. what had changed since the Public Guardian's reappointment as his conservator, T.J. did not answer the court's question, but instead replied that he felt "together" and was "mentally . . . fine." He had an idea of how he would spend his monthly income, but speculated as to how much he would need to spend on food, clothing, and housing. Speculation is not evidence. (*People v. Dennis* (1998) 17 Cal.4th 468, 508.)

This case is unlike *Everette M.*, *supra*, 219 Cal.App.3d 1567, on which T.J. relies. In that case, the conservatee "was able to establish the existence of a monthly income and furnish a budget [that] would fit within that income." (*Id.* at pp. 1573-1574.) There was no evidence that the furnished budget was "unreasonable." (*Id.* at p. 1574.) The conservatee also had an "established . . . employment history, and testified [that] he would seek further employment to assist in meeting his budgetary needs." (*Ibid.*) Most significantly, he showed that he could rely on third parties for assistance should he struggle financially. (*Id.* at p. 1573.) Such evidence established a prima facie case that the conservatee's "condition had changed to the extent that he [was] . . . able to provide for his necessities." (*Id.* at p. 1574.)

5

Here, in contrast, T.J. did not establish that his proposed budget was reasonable. Unlike the *Everette M.* conservatee's budget, which was based on past experience (*Everette M.*, *supra,* 219 Cal.App.3d at p. 1574), T.J.'s was based on speculation. Most importantly, he provided no evidence about whether he could rely on others if he faced financial problems, or how he could provide for his basic needs in that event. *Everette M.* thus does not support T.J.'s contention that he showed that he is no longer gravely disabled.

### *Due process*

Alternatively, T.J. contends the trial court's dismissal of his rehearing petition violated due process. To evaluate this contention, we balance "the private interests at stake, the state or public interests, and the risk that the procedure or its absence will lead to erroneous decisions." (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 150.)

In his opening brief, T.J. does not even mention this balancing test. "[C]onclusory arguments that are not supported by pertinent legal authority or [that] fail to disclose the reasoning by which the appellant reached the conclusions [they] want[] us to adopt" do not warrant reversal on appeal. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.) T.J. does apply the balancing test in his reply brief, but that analysis is untimely and will be disregarded. (*WorldMark, The Club v. Wyndham Resort Development Corp.* (2010) 187 Cal.App.4th 1017, 1030, fn. 7.) In any event, T.J. has not shown that the balancing of the three relevant interests weighs in favor of a finding a due process violation.

6

## DISPOSITION

The trial court's order denying T.J.'s petition for rehearing, entered March 11, 2021, is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:



GILBERT, P. J.



YEGAN, J.

7

Elizabeth West, Temporary Judge
(Pursuant to Cal. Const., art. VI, § 21.)

Superior Court County of Ventura

_____

Claudia Y. Bautista, Public Defender, Michael C. McMahon and Efan Wu, Deputy Public Defenders, for Objector and Appellant.

Tiffany N. North, County Counsel, Mitchell B. Davis, Assistant County Counsel, for Petitioner and Respondent.