[Civ. No. 6531. Third Dist.—April 3, 1941.]

WILLIAM JAMES BROWN, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Keith & Creede for Petitioner.

Everett A. Corten and Dan Murphy, Jr., for Respondents.

TUTTLE, J.—Petitioner seeks to annul an order of respondent commission terminating the liability of respondent Fund [State Compensation Insurance Fund] for the payment of further compensation to him from and after March 13, 1940.

It is the rule that an order terminating liability for compensation payments should be affirmed if there is any evidence substantially tending to support the finding of the Industrial Accident Commission. (*Newman* v. *Industrial Acc. Com.*, 137 Cal. App. 477 [30 Pac. (2d) 571].) The sole question here is whether or not the record measures up to the rule stated.

On January 30, 1939, petitioner filed with the commission his claim for compensation for an injury arising out of his employment. He was a lumber scaler, and while working, slipped on an icy runway and fell some five feet, striking the upper left portion of his abdomen on the top end of certain upright timbers or piles.

After a hearing, and on March 31, 1939, findings and award were made in petitioner's favor and against the respondent, the employer's insurance carrier, granting petitioner compensation in the sum of $20.44 per week beginning October 3, 1937. In said findings it was also found that petitioner was entitled to further medical, hospital and surgical treatment necessary to cure and relieve him from the effects of his injury. Pursuant to said award compensation was paid to petitioner to and including December 30, 1939,

and treatment was furnished him. The employer was dismissed from the proceeding.

On February 9, 1940, respondent filed its petition to terminate liability as of December 30, 1939, setting forth therein that compensation had been paid and medical treatment had been furnished to said date, and further alleging that petitioner has fully recovered from any and all disability chargeable to his said injury.

After a hearing at which considerable evidence was presented, the commission made the following order:

"Findings and Award issued herein March 31, 1939, and thereafter, and on February 9, 1940, the defendant carrier filed its petition to terminate, and all parties having appeared and the matter having been regularly heard before W. Lee DeMara, Jr., Referee, and at such hearing the defendant carrier having first moved to amend its petition to supplement in support thereof an examination of the applicant by three independent medical examiners, and said matter having been submitted for decision and said motion having been granted, the said Referee now makes his order on said proceedings, as follows:

"Good Cause Appearing Therefor:

"It is hereby ordered that defendant's liability under Findings and Award herein be and it is hereby terminated as of March 13, 1940."

It must be conceded at the outset that the burden of proving the termination of liability upon the part of an insurance carrier rests upon the latter. (*Witt's Dairy* v. *Industrial Acc. Com.*, 37 Cal. App. (2d) 16 [98 Pac. (2d) 812].) On the other hand, if there is any evidence from which the commission could reasonably infer or conclude that petitioner had fully recovered from his injuries, the award must be upheld.

Ever since the accident, petitioner complained of severe pains in various parts of his body. The many doctors who examined him accepted his statements of subjective pain, but were unable to prescribe a remedy which would relieve him. On the hearing which resulted in the order under attack, several doctors testified that only an exploratory operation could determine whether or not petitioner was suffering from an internal injury. On May 31, 1940, an exploratory operation was offered by the defendant to the applicant, without qualification, by letter addressed to the Industrial Accident Com-

mission with a copy to applicant's attorney. When the applicant did not accept the offer for a period of more than thirty days, an order was made (July 26, 1940) terminating liability. On the last hearing three medical experts were appointed by the commission to report on petitioner's condition. The testimony of those doctors appeared by way of signed statements. Dr. Falconer stated that: "If, as there is some reason to think might happen, nothing abnormal is found on exploratory operation which could be attributed to his injury, or which can be causing his pain and disability, then we will have to consider that the man is undoubtedly a malingerer." Dr. Callander stated: "I do not think that this luetic condition is entering into his picture in any way. In the event that careful exploration through an adequate upper abdominal incision fails to show anything thought to be sufficient to cause this extraordinary amount of pain on pressure in the upper abdomen, then I would revert to a diagnosis of absolute malingering. I do not often accuse a person of this, but this will have to be my opinion in the event that nothing is found on exploration." Dr. Twitchell stated: "My examination of this man shows him to be neurologically practically negative, with the exception of partial Argyll Robertson pupils. This of course is indication of neurosyphilis but I can find no active evidence of any disease of the central nervous system. He cannot be classed either as a tabetic or a paretic and I do not feel that this man can be looked upon as a case of functional disease. He is about as tough a looking sailor man as I have ever seen, and I fail to see how the injury that he received could have produced the long standing effects which he declares he is suffering from. I cannot hazard an opinion as to the possibilities of a perisplenitis but I should as neuropsychiatrist advise against any exploratory work on his abdomen. As a rule I am most reluctant to hint at malingering, but in this case the temptation is too strong to withstand. Verbum sap!" Dr. Twitchell further stated: "Wednesday morning I had a long conference with Drs. Falconer and Callander in the matter of William James Brown. I still adhere to the opinion that this man is endeavoring to make us believe that he is suffering from things from which he is not suffering. At the same time I am willing to concede what both Drs. Falconer and Callander say, i. e., that there is possibly some physical thing within the abdomen, for example, a tiny knuckle of gut as an in-

complete hernia in the abdominal wall or a string of adhesion. While I consider this as a possibility, I think that the likelihood is extremely remote. An exploratory operation to be of any value would necessitate, according to Dr. Callander an incision about six inches long and a great deal of handling of the abdominal contents. If this man were a neurotic, I should consider such procedure highly dangerous in that it would probably provide him with a new line of symptoms and complaints which would last indefinitely. Even though I regard him as free of neurosis, I feel that he could capitalize upon such an operation by remaining in the hospital for an indefinite period and get out of the hospital with more complaints than ever.''

The foregoing is all the evidence referred to by respondents as sustaining their position, and as justifying the termination of liability.

The record presents an amazing series of conflicting and contradictory diagnoses. Here are some of them which were made prior to the last hearing, and between September 1, 1937, and December 13, 1938:

''1. September 25, 1937, S. W. Cartwright, M. D., Nubieber, Cal.

'Contusion, with possible fracture of ribs on left side.' Prognosis—indefinite.

2. October 1, 1937, P. W. McKenney, M. D., Alturas.

'Contusions costal cartilages lower left chest, with separation 5–6. Sprain muscles abdomen and left lumbar muscles.'

4. October 19, 1937, P. W. McKenney, M. D., Alturas.

'Sprain muscles left lumbar region, left side, with separation lower left costal cartilages.'

5. November 6, 1937, F. H. Olberg, M. D., Redding.

'Contusion lower ribs left side of chest Lumbo-sacral strain.'

8. December 9, 1937, John W. Cline, M. D., San Francisco.

Diagnosis: Tear of diaphragmatic attachment on left side or of diaphragm itself. No diseases of gastro-intestinal tract. No kidney damage. Possible cardiac lesion.

9. December 10, 1937, H. M. F. Behneman, M .D., and Gerald F. Doyle, M. D., San Francisco.

Diagnosis: (omitting orthopedic factors): Injury to spleen with intrasplenic hemorrhage. Possible secondary infection

or pathology in diaphragm. No pathology in urinary tract or digestive system.

10. January 14, 1938, Henry L. White, M. D., Redding.

Merely repeats Dr. Behneman's diagnosis of 'ruptured spleen.'

11. February 4, 1938, Henry L. White, M. D., Redding.

'Kinking of bowel' at 'splenic flexure.' Operative interference suggested.

12. February 28, 1938, Frederick G. Linde, M. D., San Francisco.

Back symptoms cleared up; residual trouble intra-abdominal or intro-thoracic.

13. February 28, 1938, John W. Cline, M. D., San Francisco.

No trouble with intestines; no cardiac symptoms; no trouble with diaphragm.

Trouble to (a) Contusion to spleen

(b) Perisplenitis

(c) Traumatic aneurism of splenic artery.

14. March 2, 1938, Emile Holman, M. D., San Francisco.

Troubles not related to large bowel, to stomach, spleen, or anterior abdominal wall.

Diagnosis: Probable injury to pancreas.

15. March 9, 1938, John W. Cline, M. D., San Francisco.

Disagrees with Dr. Holman's diagnosis under 14. Insists trouble in spleen and immediate exploratory operation needed.

17. April 22, 1938, John W. Cline, M. D., San Francisco.

Diagnosis: Pathology in region of spleen.

20. October 6, 1938, Emile Holman, M. D., San Francisco.

Diagnosis: 'Something wrong with pancreas.'

21. December 13, 1938, Leo Eloesser, M. D., San Francisco.

'In my opinion Mr. Brown probably sustained a fracture of the lower left rib cartilages and now has signs of a chronic basal left side pleurisy.' ''

It was apparent, as the commission *then* concluded, that petitioner had suffered an internal injury of *some* character.

Upon the *second* hearing the undisputed evidence shows that petitioner's physical condition had not improved at all, and that he was still suffering the same pain. Furthermore, it appears, without contradiction, that he was unable to do any kind of work on account of the injury. Did respondents sustain the burden of proving that there had been such a change in the condition of petitioner that he was, as they must have found, fully recovered from a disability which they found to have existed on the original hearing? We think not. · The testimony of the three doctors mentioned above is *still* to the same effect as that of the medical experts who appeared at the first hearing—they all admit that something was wrong, but they are still in the dark as to the exact cause. One of them makes the rather obvious statement that if an operation does not disclose the cause of the pain, then he would be justified in saying that petitioner was malingering. In other words, if there is nothing wrong, then the patient must be well. The record shows that the three medical examiners themselves were not ready to state that petitioner's continuing disability was *not* due to his original injury—*unless and until the exploratory operation had been performed.* No point is made by respondents of the refusal of petitioner to submit to such an operation. It is scarcely believable that such experts would recommend a capital operation unless they were satisfied that there was a sufficient objective basis for the disability.

■ It is firmly established in the law of California that where the finding purporting to support an award is necessarily based on mere surmise, speculation, conjecture or guess, the award will be annulled. (27 Cal. Jur. 581.) The foregoing principle was first announced in *Roebling's Sons Co.* v. *Industrial Acc. Com.,* 36 Cal. App. 10 [171 Pac. 987], in which the court, at pages 13 and 14, said:

"The burden of proving, as has often been said in the decisions both of our own Supreme Court and courts of last resort in other states where similar conditions of statute exist, that the injury for which compensation is asked was suffered in the course of the employment and arose out of the employment, is upon the claimant. Where various theoretical conclusions may be drawn from the state of facts established, each being equally plausible, some indicating that the injury may have arisen out of the employment and others that the misconduct of the person injured was the producing cause,

then it may not be said that the evidence is sufficient to sustain the case of him upon whom the burden of proof rests. A finding in such a case in favor of the claimant is said to be speculative.''

In the same case this court, at page 14, refers to *Sanderson's Case,* 224 Mass. 558 [113 N. E. 355], in which the Massachusetts court set aside a finding of the Industrial Commission because it was based upon surmise, speculation and conjecture, and did not rest upon proof by a preponderance of evidence.

In *Clapp's Parking Station* v. *Industrial Acc. Com.,* 51 Cal. App. 624 [197 Pac. 369], this court said:

''It is always within the province of the court, in reviewing an award based wholly on circumstantial evidence, to determine whether there are inferences reasonably deducible from the evidence to sustain the Commission's findings. The findings, in such case, must be based on reasonable inference; conjecture or guesswork will not suffice. In *Kerr* v. *Ayre S. S. Co.,* (1915) App. Cas. 217, 233, Lord Shaw draws the distinction between conjecture and inference in these words: 'The distinction is as broad as philosophy itself. It is that an inference rests upon premises of fact and a conjecture does not.' ''

In the present case the commission's decision rests, not on an inference or a presumption of fact, but on a conjecture as to which of three possibilities might be revealed by the exploratory operation which all the doctors insisted was prerequisite to their giving a final medical opinion in the case.

Finally, the duty is enjoined upon us to liberally construe the Workmen's Compensation Act for the purpose of extending its benefits for the protection of persons injured. (Labor Code, sec. 3202.) The showing made in justification of the order is such that it must be concluded that the commission acted without, and in excess of its powers. (Labor Code, sec. 5952.) There is not only a failure to sustain the burden of proof, but an utter. lack of any substantial evidence to sustain the order, nor could it be said that it may be reasonably inferred that petitioner had recovered from the injury. Conjectures will not suffice.

The order is annulled.

Pullen, P. J., and Thompson, J., concurred.