[No. B036192. Second Dist., Div. Seven. Nov. 27, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY J. MIXON, Defendant and Appellant.

1472

1474

**COUNSEL**

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, John R. Gorey and Ivy E. Kessel, Deputy Attorneys General, for Plantiff and Respondent.

**OPINION**

**WOODS (Fred), J.**—We hold that when a defendant challenges a certification that he has regained mental competence (Pen. Code,[1] § 1372, subd. (a)(1)) and demands a hearing (§ 1372, subd. (c)), the section 1369, subdivision (f) presumption ("It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent") applies at that hearing.

### PROCEDURAL AND FACTUAL BACKGROUND

In May 1984 defendant was charged with attempted murder (§§ 664/187), forcible rape (2 counts, § 261, subd. (2)), forcible oral copulation (§ 288a, subd. (c)), kidnapping (§ 207), burglary (§ 459), and felony assault (2 counts, §§ 245, subd. (a)(1), 245, subd. (a)). A gun use enhancement (§ 12022.5) was alleged as to all counts except a felony assault. Great bodily injury (§ 12022.7) was alleged with respect to the attempted murder, kidnapping, and burglary counts. By amended information it was alleged defendant had been convicted of a 1972 rape in California, a 1977 rape and kidnapping in California, and a 1983 robbery in Mississippi.

In August 1985, the trial court found defendant presently incompetent (§§ 1367,[2] 1368) and ordered him committed to Patton State Hospital for

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] Section 1367 provides, in part: "A person cannot be tried or adjudged to punishment while such person is mentally incompetent. A defendant is mentally incompetent for pur-

evaluation and treatment. Thereafter defendant was transferred to Atascadero State Hospital. On January 7, 1987, the court (Superior Court Judge Eric Younger) was informed that the state hospital medical director had certified that defendant had regained mental competence (§ 1372, subd. (a)(1)[3]). Defendant's trial counsel challenged the certification, moved for a formal hearing (§ 1372, subd. (c)[4]), and requested the appointment of a doctor to examine defendant. The competency hearing began on October 23, 1987. Two psychiatrists, a psychologist, and lay witnesses testified. The trial court (Superior Court Judge Eric Younger) on November 2, 1987, found defendant competent to stand trial.

Defendant, having pleaded not guilty and not guilty by reason of insanity (§ 1016), waived jury. After numerous continuances, the guilt phase began May 18, 1988. On May 26, 1988, the trial court (Superior Court Judge Michael A. Tynan) found defendant guilty of all charges and found true all gun use and great bodily injury allegations.[5] Following the sanity phase, the trial court found defendant was sane at the time he committed the charged crimes. The court sentenced defendant to state prison for a term of 49 years.

Since defendant makes no general insufficiency of evidence claim,[6] we summarize the evidence. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

During the evening of December 13, 1982, 20-year-old Carol W. (victim) was alone in her Pasadena apartment. Around 8:30 p.m. hearing a knock at her door and expecting her boyfriend, she opened the door and saw a stranger, defendant. Defendant said he was looking for "Richard" and the victim suggested he check the rear apartment units. She shut the door and returned to watching television. About 10 minutes later there was another knock. Again thinking it was her boyfriend, the victim opened the door, saw the defendant, and when he asked to use her phone, said—although the

poses of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

[3] This section provides, in relevant part: "If the medical director of the state hospital . . . to which the defendant is committed . . . determines that the defendant has regained mental competence, such director shall immediately certify that fact to the court."

[4] The section provides: "When a defendant is returned to court with a certification that competence has been regained, the court shall notify either the community program director or the regional center director and the Director of Developmental Services, as appropriate, of the date of *any hearing* on the defendant's competence and whether or not the defendant was found by the court to have recovered competence." (Italics added.)

[5] The prosecution, during its case in chief, failed to offer proof of defendant's prior felony convictions, and the trial court made no findings concerning them.

[6] Defendant does contend the evidence establishes only one not two rapes. We separately consider this claim later in our opinion.

phone was behind her—that she didn't have one. The defendant, pointing a gun at her, punched a hole through the closed screen door and said he'd shoot her if she didn't let him in. He entered and shut the door.

Defendant asked if anyone else was in the apartment and when the victim said "no," he nevertheless checked the entire apartment. He then asked her if she had any money and when she said she didn't he stated "if he couldn't take *from* [her], he was going to take *of* [her]."

At gunpoint defendant forced the victim to orally copulate him. He then twice had forcible vaginal intercourse with her, first while she lay on her back, and second, after having her turn over.

Following these acts defendant had the victim bathe, douche, dress, and "wipe down everything that he might have come in contact with." He then tied her feet, bound her hands behind her back, put her face down on the floor of the closet and closed the door. For about 30 minutes the victim heard defendant rustling about her apartment.

Defendant then reentered the closet and began strangling the victim with her scarf. Her left eye swelled, her nose bled, and she was about to pass out when something may have startled defendant and the victim managed to swing around and scream. He stopped strangling her.

Defendant untied the victim's feet, took her into the bathroom, cleaned the blood from her face, and at gunpoint forced her from the apartment, down the street, and into the passenger seat of his van. Defendant drove to a dark side street in the Altadena hills and parked.

After what seemed to the victim like two hours of talking, the defendant ordered her to lie down in the back of the van. Defendant then struck the victim on the back of her head, causing her to momentarily lose consciousness, bleed profusely, and feel excruciating pain. He returned to the driver's seat and drove off. But when he noticed the victim was still conscious defendant ordered her back to the passenger seat. She crawled forward to the passenger seat and, eyes closed from pain, leaned against the door.

Defendant stopped the van, got out, and opened the passenger door. The victim fell out. Defendant grabbed one of her arms and dragged her away from the van. He then shot her, once in the buttock and once in the back. The victim remained motionless, pretending to be dead, until she heard the van drive away.

The victim managed to sit up, crawl to a pole, pull herself up, and stumble to the street. When she couldn't get a passing car to stop, she crossed the street, staggered to a house and banged on the door.

The victim was hospitalized for five days and incapacitated for fifteen days. When she returned home she discovered that her television, tuner, speakers, and jewelry box were missing. Her jewelry box was later recovered from defendant's home.

Defendant was arrested in April 1984 at Parchman State Penitentiary, Mississippi.

## CONTENTIONS

Defendant contends:

1.   At a restoration of competence hearing (§ 1372, subd. (c)) the burden of proof is on the state.

2.   There is insufficient evidence of two rapes.

3.   The trial court erred in separately punishing him for two rapes.

4.   The trial court erred in imposing separate punishment for each sexual offense gun use (§ 12022.5).

5.   The trial court violated section 654 by punishing him for both the sex offenses and for burglary.

6.   The burglary great bodily injury enhancement must be stricken.

## DISCUSSION

*1.   Defendant contends that at a restoration of competence hearing (§ 1372, subd. (c)) the burden of proof is on the state.*

In finding that defendant's competence had been restored, the trial court (Superior Court Judge Eric E. Younger) relied upon the section 1369, subdivision (f) presumption and burden of proof: "It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." The court stated, "I find for the purposes of this hearing that that burden of proof has not been met and that the defendant is competent . . . . The statutory presumption is the primary basis for my reasoning." Defendant contends that by imposing the burden of proof upon him, rather than upon the state, the trial court erred.

His argument is multipronged. He asserts: (a) even in an initial competency hearing (§§ 1368, 1369) the section 1369, subdivision (f) burden of proof violates due process; (b) the prosecutor should have had the burden of proof at the restoration hearing because the prosecutor was the moving party; (c) the statutory scheme (§§ 1367-1375.5) does not prescribe a burden of proof at a restoration hearing (§ 1372, subd. (c)); and (d) that at a restoration hearing due process requires that the state have the burden of proof.

We separately consider each assertion.

a. *Defendant asserts that at an initial competency hearing (§ 1368) the section 1369, subdivision (f) burden of proof violates due process.*

■ At his initial 1985 competency hearing, defendant sought to be found incompetent. His attorney commenced the hearing and called the first witness (§ 1369, subd. (b)(1)). The hearing concluded with defendant's success: he was found incompetent.

Defendant now claims that he should not have had the burden to prove his incompetence. Defendant having suffered no prejudice from the statutory burden, and having made no timely objection to it (Evid. Code, § 353), cannot complain of it. Moreover, the California Supreme Court has recently held section 1369, subdivision (f), as applicable at an initial competency hearing, to comport with due process. (*People* v. *Medina* (1990) 51 Cal.3d 870 [274 Cal.Rptr. 849, 799 P.2d 1282].)

b. *Defendant asserts the prosecutor should have had the burden of proof at the restoration hearing because the prosecutor was the moving party.*

■ Defendant here relies upon a fundamental legal principle: "On all motions the burden is on the moving party . . . ." (*Scott* v. *Renz* (1945) 67 Cal.App.2d 428, 431 [154 P.2d 738]; accord, *Heesy* v. *Vaughn* (1948) 31 Cal.2d 701, 708 [192 P.2d 753]; *People* v. *Carson* (1970) 4 Cal.App.3d 782, 785 [84 Cal.Rptr. 699] ["A motion is an application made to the court for an order. (Citations.) On the hearing the movant has the burden to support his motion by proof. (Citations.)"].) Evidence Code section 500 incorporates this principle: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." Succeeding Evidence Code sections provide examples: "The party claiming that a person is guilty of crime or wrongdoing has the burden of proof on that issue."

(Evid. Code, § 520); "The party claiming that a person did not exercise a requisite degree of care has the burden of proof on that issue." (Evid. Code, § 521); "The party claiming that any person, including himself, is or was insane has the burden of proof on that issue." (Evid. Code, § 522.)

To determine upon whose motion the court ordered the subject restoration hearing, we consider both the record and the provisions of section 1372.

The record indicates that on January 7, 1987, the trial court had received from a state hospital medical director a certification that defendant had regained competence. (§ 1372, subd. (a)(1).) As defendant's trial counsel stated to the court, "Atascadero state hospital staff has [*sic*] informed the court that they believe Mr. Mixon is presently competent to stand trial . . . ." (*Ibid.*)

Upon receipt of this certification and the defendant's return to court, the trial court, absent a request for a hearing, had authority to summarily approve the certification. Section 1372, subdivision (c) (*ante*, fn. 4) does not mandate a hearing, and subdivision (d)[7] implies approval authority without such a hearing.[8] (See *People* v. *Sundberg* (1981) 124 Cal.App.3d 944, 947, 956 [177 Cal.Rptr. 734]; *Shephard* v. *Superior Court* (1986) 180 Cal.App.3d 23, 26 [225 Cal.Rptr. 328].)

But, although section 1372 does not explicitly so provide, it has been construed to comply with the mandate of *In re Davis* (1973) 8 Cal.3d 798, 806 [106 Cal.Rptr. 178, 505 P.2d 1018]: "Should the person committed desire to challenge the report's conclusions, reasonable opportunity should be provided him to do so." As *People* v. *Murrell* (1987) 196 Cal.App.3d 822, 826 [242 Cal.Rptr. 175] notes: "Although section 1372 does not directly provide for a hearing where the defendant may challenge the medical director's certification of competence, the numerous references in that statute to a hearing indicate a legislative intention that such a hearing be afforded."

The trial court did not summarily approve the certification of competence because defendant's trial counsel challenged that certification and requested a competency hearing. Trial counsel stated, "Atascadero . . . informed the

---

[7] In pertinent part the section provides: "Where the committing court approves the certificate of restoration to competence as to a person in custody, the court shall hold a hearing to determine whether the person is entitled to be admitted to bail . . . ."

[8] Trial courts have so understood their authority. (George, Criminal Trial Judges' Benchbook (1988) § 5.D, p. 144 ["The determination can be made on the basis of the report from the hospital, the appearance of the defendant in court, and the representations of defense counsel. . . ."].)

court . . . Mr. Mixon is presently competent to stand trial . . . . [¶] We would ask the court for a formal hearing on that issue." Needless to say, the prosecution made no such motion.

Thus, as the record makes plain, it was defendant, not the prosecution, who made the motion for a section 1372, subdivision (c) competency hearing. As the moving party he appropriately bore the burden of proof. (Evid. Code, § 500.)

   c.   *Defendant asserts the statutory scheme (§§ 1367-1375.5) does not prescribe a burden of proof at a restoration hearing (§ 1372, subd. (c)).*

Section 1372, subdivision (c) is part of "a comprehensive scheme for dealing with criminal defendants whose mental competency is suspect." (*People* v. *Bye* (1981) 116 Cal.App.3d 569, 571 [172 Cal.Rptr. 186].) In construing this section we are guided by the following principles.

■   Our "quest [is] to determine the Legislature's intent so that the purpose of the legislation may be effectuated . . . . [A] statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts . . . ." (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 576 [146 Cal.Rptr. 859, 580 P.2d 274].) "The interpretation of a statute as a whole must be reasonable and when opportunity arises, made compatible with common sense and the dictates of justice. It is the duty of courts not to be ingenious to find ambiguity in the statutes because of extraneous matters, but to interpret them in such a manner that they may be free of ambiguity, and to give, if possible, a construction which not only renders them constitutional, but which is consistent with sound common sense and wise policy, with a view to promoting justice." (*Adoption of Thevenin* (1961) 189 Cal.App.2d 245, 249-250 [11 Cal.Rptr. 219].)

Clearly, the Legislature intended, as due process requires (*Pate* v. *Robinson* (1966) 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836]), that "[a] person cannot be tried or adjudged to punishment while such person is mentally incompetent." (§ 1367.) When a substantial doubt of competency arises, criminal proceedings shall be suspended (§ 1368, subd. (c)), and a competency hearing shall be held. (§§ 1368, 1369.) Also clear is the Legislature's intent to both prevent the undue confinement of incompetent defendants who cannot be returned to competence (§§ 1370, subd. (b)(1), 1370.1, subd. (b)(2), 1370.1, subd. (c)) and to "promote the . . . speedy restoration to mental competence" of those who can (§ 1370, subd. (a)(1)). To effect this latter purpose the Legislature required a court to order that an evaluation

report be submitted within 15 days (§ 1370, subd. (a)(2)), then, if necessary, within 90 days (§ 1370, subd. (b)(1)), then at 6-month intervals (*ibid.*), and at 18 months the defendant "shall be returned to the committing court where a hearing shall be held pursuant to the procedures set forth in Section 1369." (§ 1370, subd. (b)(2).) The maximum confinement period is three years. (§ 1370, subd. (c)(1).)

It is apparent that the Legislature foresaw a stream of returning defendants, either promptly certified as having regained competence,[9] or automatically returned after an 18-month interval.

As we earlier observed, the Legislature did not prescribe an automatic hearing for defendants certified competent. Instead, the trial court was authorized to merely "approve[ ] the certificate of restoration to competence . . . ." (§ 1372, subd. (d).) But, as we have also observed, the Legislature did provide a "hearing" for those returned defendants who requested one. (§ 1372, subd. (c).) That "hearing," except for the right to a jury trial (*People* v. *Murrell, supra,* 196 Cal.App.3d 822, 826), is the only hearing provided by the statutory scheme, a section 1369 hearing.

■ A defendant about whose competency a doubt arises receives a section 1369 hearing (§ 1368, subd. (b)). A defendant found incompetent, and after 18 months still not certified as competent, also receives a section 1369 hearing. (§ 1370, subd. (b)(2).) A defendant found incompetent, certified competent, and whose competency is again doubted receives a section 1369 hearing. (§ 1368.) To suggest, as defendant does, that as to another and populous class of defendants, those *certified as having regained competence*, the Legislature granted a hearing but simply failed to prescribe what kind,[10] flaunts common sense and fundamental principles of statutory construction. We hold that the reference to "any hearing" in section 1372, subdivision (c) means a section 1369 hearing,[11] including its prescription that: "It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent."

d. *Defendant asserts that at a restoration hearing due process requires that the state have the burden of proof.*

Defendant argues that to impose upon an accused the burden to prove his own incompetence creates an unconstitutional risk: when the evidence is

---

[9] In 1978, one California state hospital alone certified 184 defendant-patients as having regained competence. (Pendleton, *Treatment of Persons Found Incompetent to Stand Trial,* Am.J. Psychiatry (Sept. 1980) p. 1100.)

[10] This statutory scheme was enacted in 1872 and has been repeatedly and substantially amended.

[11] Not including a jury trial (*People* v. *Murrell, supra,* 196 Cal.App.3d 822, 826).

balanced an incompetent defendant may be compelled to stand trial. (*People v. Medina, supra,* 51 Cal.3d 870, decides this issue adversely to defendant.) Although defendant "submits that for constitutional purposes there is no difference between a competency hearing . . . and a restoration hearing" we, nevertheless, inquire whether there is such a difference.

We begin by considering what due process does and does not require.

■ "Due process requires only that the procedure adopted comport with fundamental principles of fairness and decency. The due process clause of the Fourteenth Amendment does not guarantee to the citizen of a state any particular form or method of procedure." (*People v. Rojas* (1981) 118 Cal.App.3d 278, 287 [174 Cal.Rptr. 91].) As Justice White observed for the Court in *Patterson v. New York* (1977) 42 U.S. 197 [53 L.Ed.2d 281, 97 S.Ct. 2319] "we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally 'within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " (*Patterson v. New York, supra,* 432 U.S. 201-202 [53 L.Ed.2d 281, 286-287].) In applying these principles *Patterson* upheld a New York statute which imposed upon a murder defendant the burden of proving "extreme emotional disturbance" in order to reduce the offense to manslaughter.

An Ohio statute went further. To establish self-defense, in an aggravated murder trial, it required the defendant to prove this defense by a preponderance of the evidence. The statute was found consistent with due process in *Martin v. Ohio* (1987) 480 U.S. 228 [94 L.Ed.2d 267, 107 S.Ct. 1098]. *Martin* distinguished *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068, which "declared that the Due Process Clause 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " (*Martin v. Ohio, supra,* at pp. 231-232 [94 L.Ed.2d at p. 273].)

Similarly, *In re Winship* is inapposite here. The subject statutory scheme (§§ 1367-1375.5) applies only to competency hearings, not criminal proceedings. There is no impingement upon the "proof beyond a reasonable doubt" burden of proof constitutionally required at such criminal proceedings.

One premise of defendant's argument cannot be denied: the statutory burden of proof (§§ 1372, subd. (c), 1369, subd. (f)) may compel an

incompetent defendant to stand trial. The point is not novel. In *People* v. *Bye, supra,* 116 Cal.App.3d 569, it was the prosecutor who sought to prove defendant incompetent[12] and the defendant who sought to be found competent. Bye, as does defendant Mixon, argued that the preponderance of evidence standard (§ 1369, subd. (f)) violated due process. Bye, in contrast to defendant Mixon, urged that the burden to prove incompetence be *raised,* to the beyond a reasonable doubt standard. The court declined to do so, holding defendant "has been afforded due process of law . . . . The statutory 'preponderance of the evidence' standard of section 1369, subdivision (f) is approved." (*Id.* at p. 578.)

Inherently, burdens of proof draw lines. Those who cannot cross the line, regardless of how close they may come, are denied relief. Therefore to argue, as defendant does, that the statutory burden of proof line denies relief to those who come close ("the evidence is balanced") but fail to cross it, only describes an attribute inherent in *all* burdens of proof. Defendant must do more. He must show that this line "offends some principle of justice . . . rooted in the traditions and conscience of our people . . . ." (*Patterson* v. *New York, supra,* 432 U.S. 197, 201-202 [53 L.Ed.2d 281, 287].) We conclude he has not done so.

Although defendant cites federal and some state authorities which "put the burden on the prosecution to establish competence to stand trial," he acknowledges contrary authorities. This issue, at least in California, is now settled. The burden of proof (at an initial competency hearing) may constitutionally be placed upon the defendant. (*People* v. *Medina, supra,* 51 Cal.3d 885, 886.)

Additionally, in reviewing a Missouri mental competence statutory scheme similar to California's which included a preponderance burden of proof to establish incompetence, a unanimous United States Supreme Court stated, "Missouri's statutory scheme 'jealously guards' a defendant's right to a fair trial." (*Drope* v. *Missouri* (1975) 420 U.S. 162, 173 [43 L.Ed.2d 103, 114, 95 S.Ct. 896].)

We believe California's mental competence statutory scheme no less "jealously guards" a defendant's right *not* to be tried—if incompetent.

Having been found incompetent, criminal proceedings can only be resumed if a qualified director "certifies" that a defendant has regained

---

[12] Section 1369, subdivision (f) does not assign the burden of proof to a particular *party.* Rather, the burden to prove incompetence applies whenever the statutory presumption of competence is challenged. Whoever initiates that challenge—defendant, prosecutor, or judge (§ 1368, subd. (b))—bears the burden of proof.

competence. (§ 1372.) As appellate counsel for defendant concedes, "The certification is the opinion of the medical professionals who observed and treated the defendant while he was committed . . . . Their opinion is based on long-term observation . . . ." One such medical professional testified he spent about 40-50 hours with defendant.

At any restoration hearing defendant must be represented by counsel. (§ 1368, subd. (a).)

Moreover, after a court, at a restoration hearing, finds a defendant competent the court has "a continuing duty to monitor for substantial evidence" of defendant incompetence. (George, Criminal Trial Judges' Benchbook, *supra*, § 3.1, p. 131; § 1368, subd. (a); see *People v. Pennington* (1967) 66 Cal.2d 508, 520 [58 Cal.Rptr. 374, 426 P.2d 942]; *People v. Hays* (1976) 54 Cal.App.3d 755 [126 Cal.Rptr. 770]; *People v. Melissakis* (1976) 56 Cal.App.3d 52, 61 [128 Cal.Rptr. 122]; *Shephard v. Superior Court, supra,* 180 Cal.App.3d 23.) In the instant case defendant, at the conclusion of the restoration hearing, was found competent on November 2, 1987, but it was over six months later (May 18, 1988) before his criminal trial started. A week elapsed before that trial ended on May 26, 1988. And almost another month passed before judgment was pronounced on June 23, 1988. If at any time during this almost eight-month period "a doubt [arose] in the mind of the judge as to the mental competence of the defendant" (§ 1368, subd. (a)) the judge had a duty to initiate mental competency proceedings.

Finally, we perceive no constitutional difference in the burden of proof at an initial competency hearing (§§ 1368, 1369) and at a restoration hearing (§ 1372, subd. (c)). At each hearing the fact to be proved is the same. At each hearing defendant is represented by counsel. Although at the initial hearing defendant has not yet been found incompetent, at the restoration hearing he has been certified competent—a difference we regard as a standoff. As to access to relevant information, a factor termed "critical" by *People v. Medina*, defendant's counsel not only has equal access with the prosecutor to all precertification state hospital reports but thereafter "one might reasonably expect that the defendant and his counsel would have better access than the People to the facts relevant to the court's competency inquiry." (*People v. Medina, supra,* 51 Cal.3d 870, 885.)

2. *Defendant contends there is insufficient evidence of two rapes.*

■ "Under Penal Code, section 261 rape is an *act* of sexual intercourse. Any sexual penetration, however slight, is sufficient to complete the crime." (*People v. Clem* (1980) 104 Cal.App.3d 337, 347 [163 Cal.Rptr. 553].) As our Supreme Court stated regarding the related crime of sexual penetration

with a foreign object, "a *new and separate* violation . . . is 'completed' each time a *new and separate* 'penetration, however slight' occurs." (*People* v. *Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].)

Since the trial court expressly found "there was a separate act involved" in the two rapes, our task is to determine if substantial evidence supports that finding. We conclude it does.

The victim testified that the first act occurred while she was on the couch, lying on her back, with the "unusually heavy" defendant atop her. "After that act was *completed*" defendant turned the victim over and vaginally penetrated the victim from the rear. Although the victim did not expressly describe a penile withdrawal separating the two acts of intercourse, the scene she did describe vividly and sufficiently implies such a withdrawal.

3. *Defendant contends the trial court erred in separately punishing him for two rapes.*

■ Our Supreme Court has recently and dispositively answered defendant's contention: "[S]ection 654 does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the 'sole' aim of achieving sexual gratification." (*People* v. *Harrison, supra,* 48 Cal.3d 321, 325.)

4. *Defendant contends the trial court erred in imposing separate punishment for each sexual offense gun use (§ 12022.5).*

■ We need not consider whether or not section 654 *generally* prohibits separate punishment for multiple gun use enhancements, a question dividing courts of appeal. (See *People* v. *Ramirez* (1987) 189 Cal.App.3d 603, 627-629 [233 Cal.Rptr. 645].) It suffices to conclude that when, as in the instant case, the gun use enhancement is pursuant to section 12022.3,[13] which expressly authorizes separate punishment, section 654 is no bar. (*People* v. *Ramirez, supra,* 189 Cal.App.3d 603, 629; *People* v. *Blevins* (1984) 158 Cal.App.3d 64, 71 [204 Cal.Rptr. 124].)

---

[13] The section provides: "For each violation of Section 261, 264.1, 286, 288, 288a, or 289, and in addition to the sentence provided, any person shall receive an enhancement (a) of three, four, or five years if the person uses a firearm or any other deadly weapon in the commission of the violation or (b) of one, two, or three years if the person is armed with a firearm or any other deadly weapon. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence."

*5. Defendant contends the trial court violated section 654 by punishing him for both the sex offenses and for burglary.*

■ If defendant had a common intent in committing the burglary and the sex offenses, section 654[14] bars separate punishment for the burglary.

The trial court found "[t]he crimes and their objectives were predominantly independent of each other . . . the burglary['s] . . . ultimate goal was larceny."

Substantial evidence supports the finding. Almost immediately after entering the victim's apartment defendant "wanted to know if [she] had any money." Only after the victim said she had no money did the defendant state "if he couldn't take *from* [her] he was going to take *of* [her]." And, in fact, the defendant did steal property from the victim: her TV, jewelry box, tuner, and speakers. Since there is substantial evidence defendant's intent at the time of the burglary was to steal, he may be punished for both burglary and the sex offenses. (*People* v. *Green* (1985) 166 Cal.App.3d 514 [212 Cal.Rptr. 451].)

*6. Defendant contends the burglary great bodily injury enhancement must be stricken.*

■ Defendant correctly argues that the injuries inflicted by the two gunshots cannot be relied upon to sustain the burglary great bodily injury enhancement. It was those injuries which supported the attempted murder great bodily injury enhancement, and section 654, prohibiting double punishment for the same act, applies to enhancements. (*People* v. *Dobson* (1988) 205 Cal.App.3d 496, 501 [252 Cal.Rptr. 423].)

Defendant also correctly observes that the sex offenses cannot support the subject enhancement. However traumatic they must have been, there was no evidence of *physical* injury. (*People* v. *Caudillo, supra*, 21 Cal.3d 562, 587-588.) Moreover, defendant received separate punishment for each sex offense. (§ 654.)

Defendant then concludes, incorrectly, that the only injuries which may support the subject enhancement were those inflicted inside the victim's apartment. The law is otherwise.

---

[14] In pertinent part it provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

Section 12022.7 imposes additional punishment upon a person who "inflicts great bodily injury . . . in the commission . . . of a felony . . ."[15]

"In considering the words of a statute, an appellate court is required to read the enactment in the light of the objective sought to be achieved by it as well as the evil sought to be averted. In enacting section 12022.7, the clear intent of the Legislature was to deter infliction of serious bodily injury on victims of burglary, robbery and other felonies . . . . Since human experience teaches that a person who has committed an offense will attempt to escape from its situs and since the risk of violent confrontation and consequent injury is at least as great during the course of flight as during the perpetration of the crime itself, for the purposes of section 12022.7, offenses committed during escape from the scene of the crime must be deemed acts in the commission of the crime. The conclusion reached by us is in harmony with the existing case law which in analogous situations (e.g., burglary, robbery), held that the crime is not complete until the felon has won his way to a place of temporary safety." (Citations omitted.) (*People* v. *Johnson* (1980) 104 Cal.App.3d 598, 608 [164 Cal.Rptr. 69]; see also *People* v. *Chavez* (1951) 37 Cal.2d 656, 669-670 [37 Cal.2d 656, 234 P.2d 632]; *People* v. *Salas* (1972) 7 Cal.3d 812, 823-824 [103 Cal.Rptr. 431, 500 P.2d 7 [58 A.L.R.3d 832]; *People* v. *Kendrick* (1961) 56 Cal.2d 71 [14 Cal.Rptr. 13, 363 P.2d 13]; *People* v. *Eaker* (1980) 100 Cal.App.3d 1007, 1012 [161 Cal.Rptr. 417]; *People* v. *Fuller* (1978) 86 Cal.App.3d 618, 622-624 [150 Cal.Rptr. 515].)

When defendant departed from the victim's apartment the "commission" of the burglary, for section 12022.7 purposes, had not ended. Defendant not only possessed property stolen during the burglary but still controlled the burglary victim. By removing her from the burglary situs defendant extended the need for section 12022.7's deterrent threat and thereby its effect.

Therefore, in determining whether defendant inflicted "significant or substantial physical injury" on the victim we consider injuries inflicted within and without her apartment, excluding the gunshot wounds.

---

[15] The section provides: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted.

"As used in this section, great bodily injury means a significant or substantial physical injury.

"This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. The additional term provided in this section shall not be imposed unless the fact of great bodily injury is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

" 'Whether the harm resulting to the victim . . . constitutes great bodily injury is a question of fact . . . . If there is sufficient evidence to sustain the . . . finding . . . we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding.' " (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 107 [192 Cal.Rptr. 748, 665 P.2d 520].)

If the injuries are more than " 'transitory and short-lived bodily distress" they "will qualify as 'great bodily injury.' " (34 Cal.3d at p. 107)

The question then is, does the following constitute substantial evidence of more than "transitory and short lived bodily distress": the defendant strangled the victim with her scarf tight enough to nearly cause her to pass out; she felt herself choking; her left eye started swelling and her nose started bleeding; she couldn't breathe; she felt pain around her neck and saw blood; blood was all over her face; when she was forced from her house she was still suffering from the head injuries she received in the closet; when she lay on her stomach in the van she felt a strong blow on her head; it produced a big lump on the back of her neck; she momentarily lost consciousness; she then went into "very excruciating pain"; the wound bled; when she then crawled to the front seat she was in "really bad pain"; as defendant drove fast and erratically she wasn't looking because she was in a lot of pain and kept her eyes closed; she bled a lot in the van; when defendant later stopped the van she was in so much pain that she wasn't looking around; when defendant opened the passenger door she fell to the concrete or asphalt-like ground; she was in pain when she fell to the ground; defendant grabbed her by one arm and dragged her away from the van; she sustained a dark purple line across her neck from the strangulation; her eyes were all red and her face was very bruised.

Our answer is yes. (See *People* v. *Lopez* (1986) 176 Cal.App.3d 460, 463-465 [222 Cal.Rptr. 83].) Defendant's contention is without merit.

DISPOSITION

The judgment is affirmed, as modified.[16]

Lillie, P. J., concurred.

**JOHNSON, J.,** Concurring and Dissenting.—I concur in parts 2 through 6 of the majority opinion.

---

[16] The abstract of judgment incorrectly shows sentence stayed on count 7 but imposed on count 8. We hereby correct it to show sentence stayed on count 8 but imposed on count 7. This change does not affect the sentence length.

However, I find I must respectfully dissent from part 1 in which the majority holds the presumption a defendant is mentally competent to stand trial should apply at a hearing on the restoration of competency of a defendant the court has previously adjudicated incompetent to stand trial. In my view, once a defendant has been judicially determined to be incompetent to stand trial the People bear the burden of proving the defendant has been restored to competency.

In California, a person cannot be tried while mentally incompetent. (Pen. Code, § 1367.)[1] As defined by section 1367, a defendant is mentally incompetent "if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." When, during the pendency of a criminal proceeding, doubt arises in the mind of the court as to the defendant's mental competence the court must suspend criminal proceedings and order a competency hearing. (§ 1368.) Section 1369, subdivision (a) provides that for purposes of such a competency hearing the court shall "appoint a psychiatrist or licensed psychologist and any other expert the court may deem appropriate, to examine the defendant." The section further provides that it "shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." (§ 1369, subd. (f).)

At the original competency hearing in this case defendant Mixon successfully rebutted the presumption of competence. He was adjudicated incompetent to stand trial and was committed to a state mental facility for treatment and further evaluation. After officials at the state mental hospital certified Mixon had regained competence the court held a second competency hearing. At this restoration of competency hearing, the court, applying the presumption of competence contained in section 1369 subdivision (f), held defendant failed to satisfy the burden of proving his incompetence by a preponderance of the evidence and therefore adjudicated Mixon competent to stand trial. After hearing all the evidence the trial court quoted from section 1369, subdivision (f) as follows: "It shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent."

Then the court stated: "I find for the purposes of this hearing that burden of proof has not been met and that the defendant is competent, and, accordingly, that he will proceed to trial."

---

[1] All future references are to the Penal Code unless otherwise noted.

Defendant argues section 1369, subdivision (f) is unconstitutional on the ground that it is fundamentally unfair to require an incompetent person to prove his own incompetence.

Whether a defendant can constitutionally be required to prove incompetency at the *initial* competency hearing is the subject of debate among courts and commentators.[2] California follows the minority view due process is not violated by requiring a defendant initially to prove his own incompetence. (*People* v. *Medina* (1990) 51 Cal. 3d 870 [274 Cal.Rptr. 849, 799 P.2d 1282].) (See also *State* v. *Chapman* (1986) 104 N.M. 324 [721 P.2d 392, 395-396]; *Lowenfield* v. *Phelps* (5th Cir. 1987) 817 F.2d 285, 294; *State* v. *Pedersen* (Iowa 1981) 309 N.W.2d 490, 496; *Wallace* v. *State* (1981) 248 Ga. 255 [282 S.E.2d 325, 330]; *Spencer* v. *Zant* (11th Cir. 1983) 715 F.2d 1562, 1567; White v. *Estelle* (5th Cir. 1982) 669 F.2d 973, 975.)

In this case, however, we are not considering an initial determination of incompetency under section 1369. This case deals with *restoration* of competency under section 1372. Here, defendant had already been found incompetent by a preponderance of the evidence at an initial competency hearing held pursuant to section 1369 at which the presumption of competency was rebutted.

By its terms the presumption of competency contained in section 1369 only applies at an original competency hearing. It is not incorporated by reference into restoration hearings under section 1372. (See *People* v. *Murrell* (1987) 196 Cal.App.3d 822, 826 [242 Cal.Rptr. 175].) Thus it is not necessary to address the constitutionality of sections 1369 or 1372, but rather to determine where, as a matter of judicial rule, the burden of proof should lie in a restoration hearing under section 1372.

Contrary to the view expressed by the majority, this case does not turn on whether the state or the defendant is the "moving party" at the hearing on

---

[2] The majority of courts have held that once doubt about a defendant's competence to stand trial has been raised, due process requires the prosecution to shoulder the burden of proving defendant competent. (See *United States* ex rel. *Bilyew* v. *Franzen* (7th Cir. 1982) 686 F.2d 1238, 1244-1245; *People* v. *Bender* (1960) 20 Ill.2d 45, 53-54 [169 N.E.2d 328, 332]; *United States* v. *Hollis* (3d Cir. 1977) 569 F.2d 199, 205; *United States* v. *DiGilio* (3d Cir. 1976) 538 F.2d 972, 988; *Brown* v. *Warden, Great Meadow Correctional Facility* (2d Cir. 1982) 682 F.2d 348, 349; *United States* v. *Makris* (5th Cir. 1976) 535 F.2d 899, 906; *Estock* v. *Lane* (7th Cir. 1988) 842 F.2d 184, 188; *United States* v. *Zovluck* (S.D.N.Y. 1977) 425 F.Supp. 719, 721; *United States* v. *Blohm* (S.D.N.Y. 1984) 579 F.Supp. 495, 499; *United States* ex rel. *Bornholdt* v. *Ternullo* (S.D.N.Y. 1975) 402 F.Supp. 374, 377; *State* v. *Heger* (N.D. 1982) 326 N.W.2d 855, 858; *Commonwealth* v. *Crowley* (1984) 393 Mass. 393 [471 N.E.2d 353, 357-358]; *Diaz* v. *State* (Del. 1986) 508 A.2d 861, 863; *People* v. *McCullum* (1977) 66 Ill.2d 306 [362 N.E.2d 307, 310]; *State* v. *Bertrand* (1983) 123 N.H. 719 [465 A.2d 912, 916]; *State* v. *Pruitt* (1984) 18 Ohio. App.3d 50 [480 N.E.2d 499, 506].)

restoration of competency. It cannot be disputed the question of the defendant's competency to stand trial is again before the court because the state, through its mental health officials, contends the defendant has been restored to competency. The fact the defendant has chosen to contest that assertion is not determinative of the question who bears the burden of proving what.

Where the burden of proof should fall in a restoration of competency hearing is a question of first impression in California. For the reasons set forth below I have concluded the burden should rest with the People. I do not rest this conclusion on constitutional grounds for I find adequate precedent in existing case law and well-accepted rules of jurisprudence.

One very obvious reason the burden of proof should lie with the prosecution is that it is inconsistent to presume a defendant is competent when the court has previously found him to be incompetent. It is a well-established principle of law that things once proven to exist in a particular condition are presumed to continue in that condition until the contrary is proven. (*Lux* v. *Haggin* (1886) 69 Cal. 255, 381 [10 P. 674].) This principle is codified in Civil Code section 3547 which states: "A thing continues to exist as long as is usual with things of that nature." This principle has been applied to the determination of a person's mental state in cases involving testamentary incompetency (*Estate of Fosselman* (1957) 48 Cal.2d 179, 186 [308 P.2d 336]), and the insanity defense (*People* v. *Berry* (1955) 44 Cal.2d 426, 433 [282 P.2d 861]). In *People* v. *Berry*, the court held it was proper to instruct the jury, "[A] condition once shown to have existed is presumed to continue until the contrary is proved; and therefore if the jury should find that at some time prior to the commission of the assault, defendant was suffering from some form of insanity, then it would be presumed that he was suffering from such form of insanity when he committed the assault." (*Ibid.*)

In *In re Franklin* (1972) 7 Cal.3d 126 [101 Cal.Rptr. 553, 496 P.2d 465], our Supreme Court explained the reason for applying this presumption for mental capacity saying, "the fact that defendant must [initially] prove his insanity by a preponderance of the evidence constitutes 'a very solid basis upon which the presumption of continuing mental illness may rest.'" (Citation omitted.) The court went on to observe, "it is the general rule that when insanity has been adjudicated it is 'presumed to continue unless the contrary is shown.'" (*Id.* at p. 141, fn. 9, quoting *In re Zanetti* (1949) 34 Cal.2d 136, 138 [208 P.2d 657]; see also *In re Dennis* (1959) 51 Cal.2d 666, 673-674 [335 P.2d 657].)

This principle, that a mental state found to exist is presumed to continue to exist until the contrary is proved, has been applied by the courts of other jurisdictions at hearings on the restoration of competency to stand trial.

In *Manning* v. *State* (Tex.Crim.App. 1987) 730 S.W.2d 744, 748, the Texas Court of Criminal Appeals reaffirmed previous opinions holding that once incompetency to stand trial has been established the burden shifts to the state to prove the defendant is presently competent. The court stated: "[T]he case law through the years is fairly clear that a defendant has the burden of proving by a preponderance of the evidence, his incompetency to stand trial or his insanity at the time of the offense. . . . Case law is also clear that the burden of proof shifts to the State if a prior, unvacated adjudication of incompetency or insanity is shown. We hold, consistent with common law, that if such prior adjudication for *incompetency* is shown, the State must then prove the accused's *competency* to stand trial . . . ." (Citations omitted, italics in original.)

The reason for placing the burden on the state was explained in an earlier opinion by the Texas Court of Appeals: "We hold that in a case where the defendant has been previously found incompetent, the presumption of competency does not prevail, and the State has the burden of proving competency by a preponderance of the evidence unless there has been no objection by the defendant to the report from the head of [the commitment facility]. It is the State which is asserting that a condition has changed and therefore they [*sic*] should have the burden of proving it. By objecting, the defendant is relying on the status quo of the prior adjudication where he did have the burden of proof." (*Villarreal* v. *State* (Tex.Ct.App. 1985) 699 S.W.2d 364, 366.)

The reasoning by the Texas courts requiring the state to prove restoration of competency is very similar to the reasoning behind the presumption of continued insanity expressed by our Supreme Court in *In re Franklin,* quoted, *ante,* page 1492.

In *Perkins* v. *Mayo* (Fla. 1957) 92 So.2d 641, 644, the Florida Supreme Court granted a petition for writ of habeas corpus on the ground the trial court accepted defendant's guilty pleas and imposed sentence despite having found the defendant incompetent to stand trial. The court stated: "It is true that all persons are presumed to be sane but when one is adjudicated to be insane, the presumption is that he continues in that state until shown that sanity has returned. One cannot be tried, sentenced or executed while insane. Petitioner having been adjudicated mentally incompetent February 15, 1949, he is presumed to remain in that state until a proper hearing is held and he is adjudicated to be mentally competent . . . ." (Citations omitted.) (Accord: *People* v. *Swallow* (1969) 60 Misc. 2d 171 [301 N.Y.S.2d 798, 801-802]; *Blunt* v. *United States* (D.C. Cir. 1957) 244 F.2d 355, 360, fn. 17.)

In the present case, defendant was adjudicated incompetent to stand trial on the basis of testimony from two psychiatrists that defendant was a delusional, paranoid schizophrenic. This is sufficient to create a presumption of continued insanity, *People* v. *Berry, supra,* 44 Cal.2d at page 433; *In re Dennis, supra,* 51 Cal.2d at pages 665-670, and a fortiori, a presumption of continued incompetency to stand trial.

A related reason for placing the burden of proof on the prosecution is that absent specific allocation by the Legislature, the party asserting the affirmative of an issue usually carries the burden of proving that assertion. (Evid. Code, § 500; *Heesy* v. *Vaughn* (1948) 31 Cal.2d 701, 708 [192 P.2d 753].) Thus, in civil competency proceedings a conservatee wishing termination of his conservatorship has the burden of proving by a preponderance of the evidence, "since the prior establishment . . . of the conservatorship, [his] situation has changed so that he is no longer gravely disabled." (*Conservatorship of Everette M.* (1990) 219 Cal.App.3d 1567, 1573 [269 Cal.Rptr. 182].) And, under workers' compensation law, an employer wishing to terminate temporary disability payments has the burden of proving an injured worker's disability has improved. (*Brown* v. *Industrial Acc. Com.* (1941) 44 Cal.App.2d 6, 8 [111 P.2d 931]; *Contractors I. Exch.* v. *Indus. Acc. Com.* (1925) 72 Cal.App. 350, 353 [237 P. 404].)

In its commentary on Evidence Code section 500, the Law Revision Commission identified several factors which it believed should influence the court's allocation of the burden of proof. These factors are "the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact." (Cal. Law Revision Comm. com., 29B West's Ann. Evid. Code (1966 ed.) § 500, p. 431, Deering's Ann. Evid. Code, § 500 (1986) p. 215.) In my view, these factors weigh in favor of allocating the burden of proof to the People.

The parties' knowledge concerning the particular fact in issue and the relative availability of the evidence to the parties were the principal factors which led our Supreme Court to hold the burden of initially proving incompetency should rest with the defendant. (*People* v. *Medina, supra,* 51 Cal.3d at p. 885.) The court expressed the view that:

"In determining the propriety of a particular proof allocation, a critical factor is the extent to which either party has access to the relevant information. As stated in *Morrison* v. *California* (1934) 291 U.S. 82, 89 [78 L.Ed.2d 664, 669-679, 54 S.Ct. 281], due process generally allows shifting to the defendant the burden of proving his affirmative defenses if, 'upon a balanc-

ing of convenience or of the opportunities for knowledge,' the burden shift does not subject the defendant to hardship or oppression. [¶] Applying this principle to the present case, one might reasonably expect that the defendant and his counsel would have better access than the People to the facts relevant to the court's competency inquiry . . . . The People, on the other hand, have little or no access to information regarding the defendant's relationship with his counsel, or defendant's actual comprehension of the nature of the criminal proceedings." (51 Cal.3d at p. 885, citations omitted.) (See also Pizzi, *Competency to Stand Trial in Federal Courts: Conceptual and Constitutional Problems* (1977) 45 U. Chi.L.Rev. 21, 54-56.)

Unlike the situation at the initial competency hearing, when a restoration of competency hearing is held the state has had custody and control over the defendant for a considerable period of time—almost two years in the present case. Given the state's 24-hour-a-day access to the defendant over a substantial period of time, state hospital personnel have had ample opportunity to observe, test and interview the defendant. At the restoration hearing it is the defense, not the prosecution, which is severely limited in its access to the type of evidence necessary to satisfy the burden of proof as to the defendant's present competency. Indeed, the People concede in their brief in this appeal that the state "unquestionably [has] the most evidence likely to establish the propriety of the certification [of competency]."

The record in this case shows the People's expert, Dr. Riley, spent between 30 and 40 hours with the defendant while the defendant was committed to Atascadero State Hospital and that Dr. Riley relied heavily on this exposure to defendant in rendering his opinion defendant was competent to stand trial. In contrast, defendant's expert, Dr. Eisenberg, was able to spend only three hours with defendant in preparing his evaluation. I do not suggest this disparity in the time spent with defendant raises a due process issue or that it entitles Dr. Riley's opinion to greater weight on the issue of competency than Dr. Eisenberg's opinion. My point is simply that given the state's greater opportunity to gather evidence on the issue of competency it is reasonable to put the burden of proving competency on the state at the restoration hearing.

Placing the burden of proving restoration of competency on the People promotes society's interest that an incompetent defendant will not be compelled to stand trial in cases where the evidence is evenly balanced between competence and incompetence. It is not true, as the People contend, the risk of an erroneous finding of competency is no greater at the restoration hearing than at the initial competency hearing. At the initial competency hearing the prosecution is severely limited in its access to evidence on the issue of competency. But, at the restoration hearing the circumstances are

reversed and it is the defendant who is limited in terms of independent psychiatric evidence of his mental state. Added to this disadvantage is the tendency of the fact finder, knowing who bears the burden of proof, to view the burdened party's evidence more skeptically as it comes in. (See *United States* ex. rel. *Bilyew* v. *Franzen, supra*, 686 F.2d at p. 1248.) Therefore, placing the burden of proof on the defendant at the restoration hearing would make it more difficult for the defendant to prove continued incompetency than to prove incompetency initially. The illogic of this result is clear given the fact the defendant comes before the court already adjudicated incompetent to stand trial and comes not of his own volition but on the contention of the state that it has restored the defendant's competency to stand trial.

The final factor mentioned by the Law Revision Commission is the probability of the existence or nonexistence of the fact to be proved; in this case, competency to stand trial. At the initial hearing the defendant is presumed competent—a presumption clearly in keeping with probability. However, once the defendant has been adjudicated incompetent the probability is that he remains so. (See conc. opn., *ante*, pp. 1492-1494.) Accordingly, the burden of proof should follow the probabilities and rest with the People on the question of competency.

Two additional points raised by the People require only brief discussion. Accepting the People's view would mean the certification of the state mental health facility attesting to defendant's competency should be treated as presumptively valid and the burden should be on the defendant to convince the court the state's assessment is wrong. The People cite no authority for the proposition its expert's opinions are *presumed* correct by virtue of their being offered by the People. The law is clearly to the contrary. (See Pen. Code, § 1127b.) The People also contend if the presumption of competency contained in section 1369 does not apply to restoration hearings under section 1372 then, logically, none of the other procedural provisions of section 1369 apply either. Consequently, there are no procedural rules for a restoration hearing under section 1372. This argument is answered by *People* v. *Murrell, supra*, in which the court points out, "The hearing on the certification of competence provided for in section 1372 is . . . a special proceeding." (196 Cal.App.3d at p. 826.) Thus, any questions about procedures under section 1372 can be answered by applying the rules of practice prevailing in civil actions generally. (See *Holman* v. *Toten* (1942) 54 Cal.App.2d 309, 316 [128 P.2d 808].)

In conclusion, a rule requiring the People to bear the burden of proving restored competency best effectuates the intent of the Legislature and the interests of society. Under section 1369 of the Penal Code, once a doubt

arises in the mind of the trial judge as to the defendant's competence to stand trial, it becomes the trial judge's responsibility to ensure the defendant is competent before proceeding to trial. This responsibility arises *irrespective* of the views of the prosecutor or defense counsel as to the defendant's competency. (Pen. Code, § 1368, subds. (a) and (b).) It is a responsibility "fundamental to an adversary system of justice." (*Drope* v. *Missouri* (1975) 420 U.S. 162, 172 [43 L.Ed.2d 103, 113, 95 S.Ct. 896].) Strategic decisions by the prosecutor or defense counsel should not dictate the outcome. (See Pizzi, *supra*, U. Chi.L.Rev. at p. 57.) It follows, then, the determination of restored competency should not result from a failure of proof of continued *in*competency but from proof which satisfies the court it is trying a competent defendant. If, after reviewing the evidence presented, the court is undecided as to whether the defendant is competent then the adjudication of incompetence must stand. The court has the power to order additional evaluation and investigation and the director of the mental health facility may recertify the defendant as competent at any time in the future. Under this procedure, the People are afforded every opportunity to restore the defendant to competency and prove they have done so and at the same time the court meets its responsibility to "jealously guard" the defendant's right to a fair trial. (*Drope* v. *Missouri, supra,* 420 U.S. at p. 173 [43 L.Ed.2d at p.114].)

Appellant's petition for review by the Supreme Court was denied February 14, 1991. Mosk, J., and Broussard, J. were of the opinion that the petition should be granted.