Filed 4/21/15  P. v. Banda CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B253830 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA398996) |
| v. | |
| EDDIE JESUS BANDA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bob S. Bowers, Jr., Judge.  Modified and, as modified, affirmed with directions.

Alan E. Spears, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Chung L. Mar and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Eddie Jesus Banda appeals from the judgment entered following his convictions by jury on count 2 – corporal injury to a cohabitant, with personal use of a deadly and dangerous weapon, and personal infliction of great bodily injury under circumstances involving domestic violence, and on count 3 – dissuading a witness, with a court finding as to count 2 he suffered a prior conviction for violating Penal Code section 273.5, subdivision (a), and court findings he suffered a prior felony conviction, a prior serious felony conviction, and three prior felony convictions for which he served separate prison terms.[1]  (Pen. Code, §§ 273.5, subds. (a) & (e)(1), 136.1, subd. (a)(1), 667, subds. (a) & (d), 667.5, subd. (b), 12022, subd. (b)(1), & 12022.7, subd. (e).)  The court sentenced appellant to prison for 18 years 4 months.  We modify the judgment and, as modified, affirm it with directions.

## FACTUAL SUMMARY

1. *People's Evidence.*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established that on May 16, 2012, Monica Zuniga (the victim), appellant, and appellant's nephew Ramiro Wayne B. (Wayne) resided in the 300 block of North Gifford in Los Angeles County.  Zuniga and appellant were cohabiting and appellant was the father of Zuniga's baby.

Zuniga testified at trial as follows.  The night before May 16, 2012, Zuniga and appellant were arguing.  On May 16, 2012, Zuniga and appellant were in their bedroom. Appellant swung a wooden bat at Zuniga.  She raised her right arm to prevent the bat from hitting her face.  Appellant struck her right forearm with the bat, causing a bruise.

---

[1]     The jury acquitted appellant on count 1, which alleged on or about May 16, 2012, appellant committed assault with a deadly weapon, i.e., a bat, on Monica Zuniga.

2

Appellant argued with Zuniga for a few hours. Appellant then hit Zuniga on the back of her head with the bat. Zuniga fell. Her head began bleeding. She testified she was bleeding "kind of a lot." Various materials in the bedroom were stained by Zuniga's blood. Zuniga's shirt, some sheets, and a towel were stained by her blood. Appellant helped Zuniga to the shower to rinse off the blood. Zuniga was able to function physically after appellant hit her in the back of the head with the bat.

Wayne testified that Zuniga and appellant were arguing in their bedroom. Wayne heard something like a "magnet being stuck to a refrigerator." After Wayne heard the noises in the bedroom, Zuniga and appellant exited the bedroom and went towards the restroom. At some point, appellant took a blanket and pillow to a washing machine. A brown stain, about the size of a palm of a hand, was on the sheet.

According to Zuniga, at some point she told appellant's mother that Zuniga wanted to use the phone, but appellant's mother did not let her. The prosecutor asked, "at that time, was your head still injured and not healed from the gash that [appellant] caused with the bat?" Zuniga replied yes. A few days before June 2, 2012, Zuniga's mother came to the residence. At that time, neither Zuniga's head wound, nor the bruise on her arm, had healed. Zuniga left to live with her mother.

On June 2, 2012, Zuniga went to the doctor. Neither the head wound nor the bruise on her arm had healed. Zuniga went to the doctor because of her head, for which she was given Tylenol. The doctor did not measure Zuniga's head wound or take photographs of her head or arm. On June 17, 2012, while Zuniga was staying with her mother, a social worker contacted Zuniga. Zuniga showed her head wound to the social worker. Zuniga gave conflicting testimony as to whether, at that time, her arm was bruised. The social worker recommended that Zuniga go to the police.

Los Angeles County Sheriff's Deputy Marcelo Ortega testified as follows. On June 18, 2012, Zuniga contacted Ortega at the sheriff's station. Zuniga showed to Ortega a scar on top of her head. Zuniga told Ortega that on May 16, 2012, appellant struck her on top of her head with a bat. Zuniga also told Ortega that Zuniga previously had not

3

reported the incident because she had feared for her life. On June 19, 2012, appellant was arrested.

On June 19, 2012, Los Angeles County Sheriff's Deputy Jacob Sanchez, investigating this case, spoke with Zuniga at her residence. Zuniga showed Sanchez a scar on top of Zuniga's head and told him appellant caused the scar by hitting her with a bat. On that date, Sanchez also spoke with Wayne about the incident. Sanchez testified Wayne told him the following. Wayne was watching television in the living room when he heard Zuniga and appellant arguing in appellant's room. Wayne heard a thump or thud and heard Zuniga and the baby crying. Shortly thereafter, appellant, carrying a red bat, exited the room, saying he needed to get rid of the evidence. Appellant walked towards the rear of the house, returned, then took bloody linen to a washer.

Following appellant's arrest, he telephoned Zuniga from jail. The prosecutor asked Zuniga, "Did he talk about this incident that resulted in you having this gash in the top of your head from the back," and she replied she thought so. On July 2, 2012, appellant, in jail, spoke with Zuniga and, in a recorded conversation, told her to say he had hit her with his open hand and she had cut herself when she hit the ground. Appellant also told Zuniga if she reported appellant had hit her with a bat, "that's attempted murder."

2. *Defense Evidence.*

In defense, appellant testified as follows. Appellant did not hit Zuniga with a bat. In May 2012, Zuniga and appellant were accusing each other of being lazy parents because, inter alia, the baby had a made a mess with food and had stained the bed sheets. Zuniga slapped a bottle out of the baby's hand. Appellant unsuccessfully tried to hit Zuniga to protect the baby. Zuniga began shaking the baby. Appellant again unsuccessfully tried to hit Zuniga. Zuniga fell to the back of the bed and onto a mattress. Appellant took the bed linen and threw it into the wash bin.

4

In 2001, appellant suffered a conviction for corporal injury to a cohabitant or spouse. The victim in that case was not Zuniga. In 2009, appellant pled guilty to corporal injury to a cohabitant or spouse, i.e., Zuniga. Appellant testified the latter offense was a misdemeanor but the offense in fact was a felony.

## ISSUES

Appellant claims there is insufficient evidence of great bodily injury supporting the true finding as to the Penal Code[2] section 12022.7, subdivision (e) allegation pertaining to count 2. Respondent claims the three section 667.5, subdivision (b) enhancements must be stricken.

## DISCUSSION

1. *Sufficient Evidence Supports the True Finding as to the Section 12022.7, Subdivision (e) Allegation Pertaining to Count 2.*

Appellant claims there is insufficient evidence of great bodily injury supporting the true finding as to the section 12022.7, subdivision (e) allegation pertaining to count 2. We disagree. Section 12022.7, subdivisions (e) and (f), state, in relevant part, "(e) Any person who personally inflicts *great bodily injury* under circumstances involving domestic violence in the commission of a felony . . . shall be punished by an additional and consecutive term of imprisonment . . . . [¶] (f) As used in this section, 'great bodily injury' means a significant or substantial physical injury." (Italics added.)

In *People v. Escobar* (1992) 3 Cal.4th 740 (*Escobar*), our Supreme Court stated section 12022.7, subdivision (f) "contains no specific requirement that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." (*Escobar,* at p. 750.) "If the injuries are more than ' "transitory and short-lived bodily distress["] ' they 'will qualify as "great bodily injury." ' [Citation.]" (*People v. Mixon* (1990) 225 Cal.App.3d 1471, 1489 (*Mixon*).)

---

[2] Subsequent section references are to the Penal Code.

*Escobar* also stated, " 'A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description. Clearly, it is the trier of fact that must in most situations make the determination.' " (*Escobar*, *supra,* 3 Cal.4th at p. 752.) Moreover, " ' "[w]hether the harm resulting to the victim . . . constitutes great bodily injury is a question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' [Citations.]" (*Id.* at p. 750.)

In the present case, there was substantial evidence as follows. Appellant struck Zuniga twice, i.e., on her right arm, and on her head, with a wooden bat. She fell. Her head bled profusely, as indicated by the facts she testified she was bleeding "kind of a lot," various items were stained by her blood, and appellant had to help her to the shower to rinse off the blood. When Zuniga asked appellant's mother for the phone, Zuniga had a gash in her head as result of appellant hitting her with the bat.

A few days before June 2, 2012, as well as on June 2, 2012 (when Zuniga went to the doctor), Zuniga's right arm was still bruised and her head was still injured. She went to the doctor because of her head, and the doctor prescribed Tylenol, a fact permitting the inference she was experiencing pain and/or headaches from the head injury. On June 17, 2012, Zuniga's head wound was still healing and visible, and she showed it to a social worker. On June 18 and June 19, 2012, Zuniga showed to Ortega and Sanchez, respectively, the scar on Zuniga's head caused by appellant hitting her with the bat. In other words, the injury appellant inflicted to Zuniga's head on May 16, 2012, caused a gash that became a scar visible more than a month later.

Following his arrest, appellant, from jail, talked to Zuniga about "this incident that resulted in [Zuniga] having this gash" on her head. Appellant, evidencing consciousness of guilt, tried to minimize what had happened when he told Zuniga to testify he hit her with his open hand. Appellant was sufficiently concerned about, inter alia, the seriousness of the injury he inflicted to Zuniga's head that he thought he could be prosecuted for trying to kill her.

6

We hold there was sufficient evidence to convince a rational trier of fact, beyond a reasonable doubt, appellant inflicted "great bodily injury" within the meaning of section 12022.7, subdivision (e), and engaged in the conduct proscribed by that subdivision. (*Cf. Ochoa, supra*, 6 Cal.4th at p. 1206; *Escobar, supra*, 3 Cal.4th at pp. 750, 752; *People v. Nitschmann* (1995) 35 Cal.App.4th 677, 680, 683; *Mixon, supra*, 225 Cal.App.3d at p. 1489.)

The fact the jury acquitted appellant of assault with a deadly weapon (count 1) (see fn. 1, *ante*) but found true the great bodily injury allegation pertaining to count 2 does not compel a contrary conclusion. Even if these were inconsistent findings, "[i]nconsistent findings by the jury frequently result from leniency, mercy or confusion. [Citation.] Such inconsistencies in no way invalidate the jury's findings." (*People v. York* (1992) 11 Cal.App.4th 1506, 1510.) We do not invalidate an inconsistent jury finding if it is supported by substantial evidence. (Cf., *ibid.*)

Moreover, the above mentioned findings were not necessarily inconsistent. During opening argument the prosecutor commented to the effect, inter alia, when appellant swung the bat at Zuniga's *face*, he was guilty of the offenses alleged in counts 1 and 2. The jury might have acquitted appellant on count 1 to the extent it was based on appellant swinging the bat at Zuniga's face (and hitting her arm) but convicted him on count 2 based on appellant's hitting her head with the bat.

2. *Appellant's Three Section 667.5, Subdivision (b) Enhancements Must Be Stricken.*

During the November 22, 2013 sentencing hearing, the court sentenced appellant to prison on count 2 to eight years, plus four years pursuant to section 12022.7, subdivision (e)(1), and on count 3 to a consecutive subordinate term of 16 months, plus five years pursuant to section 667, subdivision (a). Appellant's total prison term was thus 18 years 4 months. The eight-year term on count 2 was based in part on the fact appellant, for purposes of section 273.5, subdivision (e)(1), had suffered within the last seven years a prior conviction in case No. BA350775 for a violation of section 273.5, subdivision (a).

7

The court later stated, "The allegation that the defendant suffered three prior convictions within the meaning of Penal Code section 667.5[,] subdivision (b), having been found true, the defendant is sentenced to the state prison for an additional term of one year for each said prior conviction for a total term of three years. [¶] Such term is ordered stayed pursuant—because one conviction has been used for the 273.5 subdivision (e) paragraph one enhancement and in the interest of justice. [¶] It is the intent of the court in imposing the foregoing sentence that the defendant shall serve a determinate term of 18 years, 4 months." One of the section 667.5, subdivision (b) enhancements was based on the previously mentioned case No. BA350775.

Respondent claims the three section 667.5, subdivision (b) enhancements must be stricken. We agree. Section 667.5, subdivision (b) enhancements must be imposed or stricken. (*People v. Bradley* (1998) 64 Cal.App.4th 386, 390, 401.)

It is clear from the trial court's sentencing comments the trial court intended appellant to serve a total of 18 years 4 months in prison, and based on sentence components other than the three section 667.5, subdivision (b) enhancements. Accordingly, the trial court purported to stay said enhancements. The trial court did so in the interest of justice, and because the prior conviction in case No. BA350775 underlay one of the section 667.5, subdivision (b) enhancements as well as the prior conviction pertaining to count 2. We will strike the three section 667.5, subdivision (b) enhancements.

### *DISPOSITION*

The judgment is modified by striking the three Penal Code section 667.5, subdivision (b) enhancements previously imposed by the trial court and, as modified, the judgment is affirmed. The trial court is directed to forward to the Department of Corrections and Rehabilitation an amended abstract of judgment**.**

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                          KITCHING, Acting P. J.

We concur:


    ALDRICH, J.


    EGERTON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.