Filed 6/27/16  P. v. Chilcote CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067545 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE340192) |
| RYAN CHILCOTE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise S. Jacobson and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Ryan Chilcote guilty of one count of corporal injury to a cohabitant (Pen. Code, § 273.5)[1] with the further finding that he personally inflicted great bodily injury (§§ 12022.7, subd. (e), 1192.7, subd. (c)(8)); and one count of false imprisonment (§§ 236, 237, subd. (a)). The trial court sentenced Chilcote to five years in prison.

Chilcote contends that insufficient evidence supports the jury's finding that he personally inflicted great bodily injury. We conclude that Chilcote's argument is without merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Chilcote and his girlfriend, Cassandra Schaffner, lived together in an apartment. On May 3, 2014, Chilcote, Schaffner and two friends were drinking and smoking marijuana throughout the day and evening. Schaffner became very intoxicated, and as a result she fell down several times, scraping her knees and hitting the back of her head on the bathtub.

After their friends left for the evening, Chilcote and Schaffner got into an argument about Chilcote's sexual comments to Schaffner's friend. As Schaffner later told a police officer and testified at the preliminary hearing,[2] Chilcote started to get physical with her during the argument. Schaffner tried to leave the apartment, but Chilcote would not let her. Schaffner eventually convinced Chilcote to let her go outside to smoke a

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]     Schaffner was not available during trial, and her preliminary hearing testimony was accordingly read to the jury.

2

cigarette, and when she got outside she started running. Chilcote grabbed her by the neck or arm and dragged her back inside the apartment.

Schaffner ran toward the bathroom, and Chilcote started choking her while she was on the ground and, leaning against the bathtub. Schaffner remembered that at some point Chilcote hit her in the face. Schaffner believes that she became unconscious while Chilcote was choking or hitting her, because she woke up on the ground in the living room. Neighbors in the apartment complex heard screaming and yelling and saw Chilcote drag Schaffner back into the apartment.

Police responded to a neighbor's anonymous 911 call and observed Schaffner on the ground with blood on the carpet near her, and blood on Chilcote's hands, neck and ear. Schaffner's injuries consisted of (1) facial injuries, including swelling of the entire right side of her face, a right eye that was swollen shut, bleeding from a laceration under her right eye, and bruised lips; (2) injuries to her neck, including redness and bruising and handprint marks consistent with choking or strangulation; (3) lacerations on parts of her body other than her face, including a bleeding laceration on her collarbone and a laceration under her right ear; and (4) abrasions and scratches on her legs, some of which Schaffner reported were from being dragged into the apartment. When paramedics first responded, blood was coming from Schaffner's nose and mouth. The day after the incident, Schaffner's eye was still swollen shut, she had an open laceration on her face, her head and face were swollen, she had bruises on her neck, and she complained of pain.

When police responded to the apartment and initially questioned Schaffner in Chilcote's presence, Schaffner stated that she was injured during a fight with a female

3

friend. However, on the way to the hospital in the ambulance she disclosed that Chilcote had assaulted her.

Chilcote was charged with kidnapping (§ 207, subd. (a)); corporal injury to a cohabitant (§ 273.5, subd. (a)), with the further allegation that he personally inflicted great bodily injury (§ 1192.7, subd. (c)(8)), and did so under circumstances involving domestic violence (§ 12022.7, subd. (e)); false imprisonment (§§ 236, 237, subd. (a)); attempting to dissuade a witness (§ 136.1, subd. (b)(3)); and disobeying a court order (§ 273.6, subd. (a)). The trial court bifurcated the trial of the count alleging that Chilcote disobeyed a court order, and the prosecutor subsequently dismissed that count.

The jury found Chilcote guilty of false imprisonment (§§ 236, 237, subd. (a)) and corporal injury to a cohabitant (§ 273.5, subd. (a)), with the further finding that he personally inflicted great bodily injury (§ 1192.7, subd. (c)(8)), and did so under circumstances involving domestic violence (§ 12022.7, subd. (e)). Chilcote was found not guilty of kidnapping or of dissuading a witness.

The trial court sentenced Chilcote to five years in prison, which included a three-year term for the great bodily injury enhancement under section 12022.7, subdivision (e)).

## II.

## DISCUSSION

Chilcote's sole contention is that insufficient evidence supports the jury's finding that he personally inflicted great bodily injury under section 12022.7, subdivision (e).

4

In considering a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. . . . We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. . . . If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. . . . 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Albillar* (2010) 51 Cal.4th 47, 60, citations omitted.) As specifically applicable here, "[i]t is well settled that the determination of great bodily injury is essentially a question of fact, not of law. ' "Whether the harm resulting to the victim . . . constitutes great bodily injury is a question of fact for the jury. . . . If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' " (*People v. Escobar* (1992) 3 Cal.4th 740, 750 (*Escobar*).)

The three-year enhancement in this case was imposed based on section 12022.7, subdivision (e), which provides that "[a]ny person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years." As used in section

5

12022.7, subdivision (e), " 'great bodily injury' means a significant or substantial physical injury."  (§ 12022.7, subd. (f).)

Although a decision as to whether the victim suffered significant or substantial physical injury is ultimately a question for the jury (*People v. Cross* (2008) 45 Cal.4th 58, 64), case law discusses the circumstances under which the evidence sufficiently supports a jury's finding of great bodily injury as defined in section 12022.7, subdivision (f).  As one recent case explained, "California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury.' "  (*People v. Washington* (2012) 210 Cal.App.4th 1042, 1047.)  There is no requirement "that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function."  (*Escobar*, *supra*, 3 Cal.4th at p. 750.)

Thus, great bodily injury has been found based on evidence of "extensive bruises and abrasions over the victim's legs, knees and elbows, injury to her neck and soreness in her vaginal area of such severity that it significantly impaired her ability to walk" (*Escobar*, *supra*, 3 Cal.4th at p. 750), and based on evidence that the victim had "multiple contusions over various portions of her body," swelling, severe discoloration, and still felt pain and had visible injuries the next day (*People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836).  Many other authorities reach similar conclusions, finding evidence of abrasions, lacerations and bruises sufficient to constitute great bodily injury.  (See, e.g., *People v. Bustos* (1994) 23 Cal.App.4th 1747, 1755 ["multiple abrasions, lacerations, and contusions suffered by the victim" from a hit to the face and struggle on the floor

6

constituted great bodily injury as defined in § 12022.7]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 733 [the victim suffered multiple abrasions and lacerations on her back and neck and had serious swelling and bruising of her right eye and a markedly swollen left cheek]; *People v. Mixon* (1990) 225 Cal.App.3d 1471, 1489 [great bodily injury inflicted when victim was strangled until she nearly passed out leaving a purple line on her neck, her eyes swelled and her nose bled, she suffered a blow to her head that produced a bump, and her eyes were red and her face was bruised].)

Here, Schaffner's injuries were consistent with the type of injuries described in the case law as constituting great bodily injury. Specifically, Schaffner suffered lacerations on her face, collarbone and under her ear, had a severely swollen face and eye, had bruising on her neck, and had abrasions on her legs from being dragged on the ground. Further, those injuries persisted until at least the next day and she continued to be in pain. Accordingly, we conclude that substantial evidence supports the jury's finding that Chilcote personally inflicted great bodily injury.

Chilcote acknowledges the case law cited above and concedes that "courts have continuously held lacerations, bruises or abrasions to be sufficient evidence of great bodily injury." However, Chilcote contends that those cases were wrongly decided and "need to be revisited." Specifically, Chilcote argues that a finding of great bodily injury under section 12022.7 should require "proof of an injury that is even more severe than

7

that required to establish 'serious bodily injury' under section 243, subdivisions (d) and (f)(4)," which applies to battery convictions.[3]

Chilcote relies on *People v. Santana* (2013) 56 Cal.4th 999 for his argument that a finding of great bodily injury requires proof of an injury that is more severe than serious bodily injury as described in section 243. However, *Santana* does not lend support. In *Santana*, the issue was whether the jury instruction for mayhem (§ 203) properly stated that "serious bodily injury" was a required element. (*Santana*, at p. 1007.) In the course of its analysis, *Santana* explained that the reference to "serious bodily injury" in the instruction came from case law holding that " '*great* bodily injury is an element of mayhem.' " (*Id*. at p. 1008.) *Santana* observed that although "the terms 'serious bodily injury' and 'great bodily injury' have been described as ' " 'essential[ly] equivalent' " ' . . . and as having 'substantially the same meaning,' " the two terms "in fact 'have separate and distinct statutory definitions' " which "may make a difference when evaluating jury instructions that provide different definitions for the two terms." (*Id*. at pp. 1008-1009.) Based on this observation, *Santana* concluded that in reviewing the jury instruction, it could not "conclude that the offense of mayhem includes *a serious bodily*

---

3     Under section 243, subdivision (d), when a battery produces "serious bodily injury," the battery is punishable by a jail term or a prison term of two, three or four years (§ 243, subd. (d)). Section 243 defines the term "serious bodily injury" as "a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of any function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (§ 243, subd, (f)(4).)

8

*injury* requirement simply based on cases holding that mayhem includes *a great bodily injury* component."  (*Id*. at p. 1009, italics added.)

*Santana* does not, as Chilcote contends, state that "serious bodily injury" as used in section 243 is intended to be a *less demanding standard* than the term "great bodily injury" as used in section 12022.7.  Instead, *Santana* simply observes that the two terms are *different*, with distinct statutory origins, so that when precise terminology matters in the drafting of jury instructions the two terms and their statutory definitions should not be used interchangeably.  Moreover, *Santana* says nothing that calls into question the long line of case authority we cited above establishing that bruises, abrasions and lacerations may properly form the basis for a jury's finding that the defendant personally inflicted great bodily injury on a victim under section 12022.7.

Chilcote also argues that the Legislature must have viewed great bodily injury described in section 12022.7, subdivision (f) as a more *severe type of injury* than serious bodily injury in section 243 because it provided a *more severe punishment* for causing serious bodily injury in the course of a battery under section 243, subdivision (d).  Specifically, Chilcote points out that the punishment for battery causing serious bodily injury is either a jail term not to exceed one year, or a prison term of two, three or four years (§ 243, subd. (d)), whereas the punishment for the great bodily injury enhancement under section 12022.7, subdivision (a) is three years in prison.[4]

---

[4]    Here, as we have explained, Chilcote was found to have inflicted great bodily injury pursuant to section 12022.7, subdivision (e), which applies to domestic violence circumstances, and which carries an enhancement of three, four or five years.  However,

9

As an initial matter, we cannot agree with Chilcote's predicate that a true finding on the great bodily injury enhancement *necessarily* carries a greater penal sanction than for the crime of battery causing serious bodily injury. A true finding on the great bodily injury enhancement carries a maximum additional term of *three* years (§ 12022.7, subd. (a)); a battery causing serious bodily injury carries a maximum additional term of *three and one-half* years more than a battery without serious bodily injury (compare § 243, subd. (a) [battery alone is six months] with § 243, subd. (d) [battery *with* serious bodily injury carries term of up to four years].)

Moreover, even assuming the legislative scheme *does* contemplate harsher penal consequences for a great bodily injury enhancement *in some cases* than a conviction for battery causing serious bodily injury, the two statutory schemes differ in important ways that make different punishments appropriate, regardless of the severity of the injuries they describe. Specifically, the punishment for causing serious bodily injury in section 243, subdivision (d) only arises in the context of a battery conviction, which is already a forceful violent crime (§ 242), whereas the punishment for inflicting great bodily injury applies to all types of felonies, regardless of whether they are necessarily forceful violent crimes. Moreover, a defendant is only assessed the additional punishment for inflicting great bodily injury in the course of a felony if he or she *personally* inflicts the great bodily injury. In contrast, the punishment for serious bodily injury in section 243,

as Chilcote correctly points out, the generally applicable enhancement for inflicting great bodily injury under section 12022.7, subdivision (a) carries an enhancement of three years. Chilcote premises his argument on the fact that section 12077, subdivision (f) provides the same definition of great bodily injury for both section 12077, subdivision (a) and section 12022.7, subdivision (e).

10

subdivision (d) does not include a requirement that the defendant *personally* inflict the injury.  (Cf. *People v. Alvarez* (2002) 95 Cal.App.4th 403 [defendant pleaded guilty to assault with a deadly weapon and battery with serious bodily injury as an aider and abettor of the direct attacker].)  Because of these differences, the disparate indicated punishments in the two statutes would not establish that the Legislature viewed great bodily injury in section 12022.7, subdivision (a) as a more severe type of injury than serious bodily injury in section 243, subdivision (d).

DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


PRAGER, J.*

---

*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.